## LENHARDT v. PONDER.

1. DEED—ASSIGNMENT LAW.—In order to set aside a deed as void under the assignment law, either under Rev. Stat., secs. 2146 or 2147, it must be shown (1) that grantor was insolvent at time of making conveyance; and (2) that conveyance was made with intent to give an unlawful preference; or (3) that grantee had reasonable cause to believe that grantor was insolvent at the time of conveyance; and (4) that grantee had reasonable cause to believe that the conveyance was made in fraud of the assignment law; but under the evidence in this case, none of these requirements were sustained.

2. IBID.—FRAUD—STATUTE OF ELIZABETH.—To avoid a deed under the Statute of Elizabeth, it must be shown, (1) that it was without consideration, or (2) that it was *mala fide* as to both parties to the instrument; but the evidence here fails to sustain either of these propositions.

3. IBID.—RECEIPT—ADMISSION—EVIDENCE.—RECITAL of consideration in a deed is in the nature of a receipt or admission, and may be explained.

Before TOWNSEND, J., Pickens, January, 1902. Affirmed.

Action by Richard Lenhardt against Wm. J. Ponder, in his own right and as executor of Nancy E. Ponder and her children. The following is the Circuit decree:

"This is an action to set aside a deed made to Nancy E. Ponder by W. J. Ponder, on the 22d day of January, 1895, for a tract of land containing 370 acres, and for the sale of the said land to pay the debts of the said W. J. Ponder. The deed is assailed for fraud on two grounds: First, that it is fraudulent and void under the assignment act, and, second, that it is fraudulent and void under the Statute of Elizabeth. The defendants deny both. The case was referred to D. P. Verner, as special referee, to take the testimony and report the same to the Court, and hence it is incumbent upon me to pass upon the testimony, unaided by specific findings of fact or law by the special referee. The testimony is voluminous, and I have carefully studied and considered the same.

I am satisfied that at the time the deed in question was made by W. J. Ponder to his wife, Nancy E. Ponder, he was solvent, and that neither he nor his wife, Nancy E. Ponder, intended by the said deed to give her an unlawful preference over other creditors of the said W. J. Ponder, or in any other way to hinder, delay or defeat other creditors of the said W. J. Ponder. I am satisfied and find that the said deed was made in good faith and upon a valuable consideration, and not with a fraudulent intent or under any fraudulent agreement as to other creditors on the part of either W. J. Ponder or his wife, Nancy E. Ponder, nor for any unlawful purpose, but was made in payment of valid and existing indebtedness which W. J. Ponder owed his wife, Nancy E. Ponder. The testimony shows beyond all question that the said W. J. Ponder had mortgaged 109 acres of land belonging to his wife to one A. L. Richardson, dated March 13, 1894, with the understanding that the said W. J. Ponder was to pay for the same out of the home tract of land. It is true, that the plaintiffs produced in evidence a deed from Nancy E. Ponder to W. J. Ponder, dated the 14th day of February, 1894, in which it is stated that W. J. Ponder had paid his wife for the land therein described and had paid the taxes on the same since 1870, and used and occupied the same as his own during that time; but this is only in the nature of a receipt or admission which it is competent to explain, and I am satisfied from the testimony in the case that this receipt has been conclusively explained by the defendants. I find that the object of making this deed was to enable W. J. Ponder to include it in the said mortgage, and that he did not pay his wife for the same, but that the deed was drawn by a lawyer through whom the Richardson money was borrowed, and he inserted therein the clause above referred to. I am further satisfied from the testimony that W. J. Ponder was to account for this tract of land to his wife in the sum of $1,500, which the land at that time was well worth. The testimony shows, and in fact it is admitted, that this 109 acre tract of land was sold under this mort-

gage against W. J. Ponder.    At the time the deed from W. J. Ponder to Nancy E. Ponder was made, the said W. J. Ponder was the head of a family and, of course, entitled to a homestead exemption in land to the amount of $1,000. The value of this homestead exemption and the value of the tract of land of 109 acres which W. J. Ponder had mortgaged to A. L. Richardson, I am satisfied is more than the value of the land in question in this case either at the time said deed was made or now.    The witnesses in this case testify as to the value of this land both now and then, and I do not think it possible to fix under this testimony the value of this land at more than $2,500.    This alone, it seems to me, is conclusive of the case, but there were other items which went into the consideration of that deed.    The testimony clearly shows that Nancy E. Ponder agreed to accept the deed for this 370 acre tract of land in payment of all that W. J. Ponder was due her, and called for her attorney to prepare the papers.    All of the facts were laid before this attorney, and in his opinion Mrs. Ponder was also entitled to compensation for the rents which her husband had received from her tract of land and also for her monies which he had used, under the understanding that these items would be made good to her, and it was upon this theory on the part of the said attorney that the consideration in full was stated to be $6,000, an amount much more than the land was worth at that time; but Mrs. Ponder no doubt realized at that time that she would soon depart this life, and desired a complete settlement of the whole matter in order that she might dispose of her property to her children, which she did do on the same day the said deed was dated.    W. J. Ponder, in his evidence, gave a full history of the transaction from about 1870 down to the exeution of the deed, and Capt. Blythe gave a clear and concise statement of the facts attending the execution of the deed and will.    The fact that an able and reputable lawyer was employed to prepare the papers and transact the business, under whose advice Mrs. Ponder and W. J. Ponder acted, is strong evidence that the whole matter

was in good faith.    I see nothing secret about the transac-
tion, as this attorney went from Easley to the home of Mrs.
Ponder and there all the papers were prepared, and some of
the neighbors were called in to witness the same.    Capt.
Blythe gives a clear and concise statement of all that took
place at this time, and of the agreement and understanding
between Mrs. Ponder and her husband, and from this testi-
mony I am clearly of the opinion that the deed was upon
valuable consideration and made in good faith, and with no
intent to defeat the rights of the other creditors of W. J.
Ponder, or to evade the assignment law of this State; in fact,
the evidence is totally insufficient to satisfy me of any fraud
whatever on the part of either W. J. Ponder or his wife.

"It is true, that since the execution of the said deed, W. J.
Ponder has lost all of his property, but the testimony shows
that the great bulk of the debts which caused him to lose
this property were made after the execution of this deed to
his wife.    There is an old saying that 'our hind sights are
better than our fore sights,' but it is equally true that we are
very often deceived by our hind sights.    We are very often
led to believe that persons were prompted by wrong motives
in their transactions.    After a lapse of over six years since
the transaction was had, I can see how the creditors of W.
J. Ponder could imagine that he and his wife did concoct a
scheme to save 370 acres of land from the wreck of his prop-
erty, but imagination is one thing and proof is another.
There is a total failure of evidence to satisfy my mind that
any such scheme was concocted or thought of.    How could
they, in 1895, foresee what has since occurred?    At that
time he had sufficient property to pay his debts left after the
sale of this tract of land to his wife.    In my judgment, the
balance of his property at that time was worth enough to pay
all the debts he then owed, and I so find.    Mr. E. M. Hunt
was also his surety on the Lenhardt notes, and at that time
the testimony shows that he was entirely solvent.    The testi-
mony further shows that both Ponder and Hunt were
regarded as good for their debts.    Mr. Lenhardt himself

says that he considered them good. The fact that after this time both of them became insolvent and lost their property, cannot affect the transaction had long before the debts which resulted in the loss of their property, were created and enforced, especially when there is not a particle of evidence to show that the deed by W. J. Ponder to Nancy E. Ponder was made with the view to put the said Ponder in position to afterwards incur indebtedness and defraud creditors thereafter existing or then existing. I see no reason, according to the testimony, why W. J. Ponder and his wife should enter into a deliberate agreement to practice fraud upon the creditors of Ponder. In fact, there is no evidence to show that Mrs. Ponder had any knowledge of any of the debts of W. J. Ponder except the mortgage to A. L. Richardson over the tract of land which was worth much more than it was mortgaged for, and which sold under forced sale for nearly twice as much as that mortgage called for.

"It is clear, under the testimony, that if the plaintiff, Richard Lenhardt, had made efforts to do so when his papers became due, he could have made his money without any trouble, but he chose to stand back for more than six years after the deed in question was made, and after both W. J. Ponder and E. M. Hunt had contracted a great many other debts, including mortgages on their property; and it is his own misfortune that these subsequent debts and liens were paid and he did not get his money. I am clearly of the opinion that the deed from W. J. Ponder to his wife, Nancy E. Ponder, was made in good faith, to pay just indebtedness, and is not tainted with fraud on the part of either the grantor or grantee, and I so find. I, therefore, hold that the said deed is neither void under the assignment law of this State nor under the Statute of Elizabeth, but a valid conveyance. The fact that Nancy E. Ponder executed her will at the same time the deed in question was made, cannot affect the issues here, because the testimony clearly shows that they were entirely different and separate transactions. W. J. Ponder made the deed which was prepared by the lawyer

of Mrs. Ponder, who was at that time sick in bed; and while her lawyer was present she simply had him to draw her will by which she gave her property as provided therein. There is no proof whatever to show that this was any part of a scheme to benefit W. J. Ponder, or to hinder, delay and defeat his creditors, and I, therefore, hold that these two transactions were entirely separate and distinct and have no connection with each other.

"The plaintiffs have filed exceptions to portions of the testimony. I overrule all of these exceptions except the fourth, for the reason that sec. 400 of the Code does not apply, and the testimony is otherwise admissible under the charge of fraud made by the plaintiffs. The plaintiffs themselves first introduced the testimony as to the transactions between W. J. Ponder and his wife; and I think thereby, even if section 400 of the Code applied, let down a gap for the defendants to bring out the testimony which they introduced with reference to these transactions. As to the fourth exception, I sustain it in so far as the testimony relates to conversations between W. J. Ponder and his mother in reference to the deed in question; but such parts of said testimony as relate to conversations and transactions between W. J. Ponder and Nancy E. Ponder, I think are competent. In my judgment, the plaintiffs have failed to make out their contention, either under the assignment law or under the Statute of Elizabeth, or to show fraud on the part of either W. J. Ponder or his wife, Nancy E. Ponder, with reference to the matters in dispute in this case, and I so find.

"It, is, therefore, ordered, adjudged and decreed, that the complaint be dismissed, and that the plaintiffs pay the costs of this action."

From this decree the plaintiff appeals.

*Messrs. J. E. Boggs, Cothran & Cothran* and *M. F. Ansel,* for appellant. *Mr. Ansel* cites: *As to conveyances be-*

*tween husband and wife, nothing being left to pay debts:* 42 S. C., 475; 35 S. C., 436; 32 S. C., 171; 44 S. C., 183; 56 S. C., 239; 52 S. C., 345; 27 S. C., 97; 51 S. C., 110. *As to the consideration alleged for the deed:* 24 S. C., 282; 25 A. S. R., 806; 29 W. Va., 441. *Ponder obtained benefit to himself through wife's will:* 22 S. C., 526. *As to the intent to hinder, delay and defraud creditors:* 40 S. C., 10. *As to effect of recital of consideration in deed:* 22 S. C., 541; 35 S. C., 315; 25 S. C., 519; 26 S. C., 167.

*Messrs. Carey & McCullough* and *Blythe & Blythe,* contra, cite: *Assignment act only applies to actual assignments, or what is tantamount thereto:* 26 S. C., 248; 44 S. C., 183; 46 S. C., 157; 27 S. C., 272; 52 S. C., 129; 59 S. C., 509. *No inference to evade assignment law can be drawn from will by wife:* 43 S. C., 448; 32 S. C., 181; 55 S. C., 195; 26 S. C., 441. *As to what is necessary to avoid a deed under Statute of Elizabeth:* 27 S. C., 286; 56 S. C., 170; 44 S. C., 289. *As to recitals in deed:* 20 Ency., 1 ed., 459, 460, 465; 12 S. C., 139; 22 S. C., 27.

July 5, 1902.    The opinion of the Court was delivered by

MR. JUSTICE GARY.    This is an action by the plaintiff, a judgment creditor of the defendant, W. J. Ponder, to set aside a deed to 370 acres of land, executed by the said W. J. Ponder to his wife, Nancy E. Ponder, on the 22d day of January, 1895, on the grounds that the said deed is void under the assignment law and also under the Statute of Elizabeth. The facts are set forth in the decree of his Honor, the Circuit Judge, which will be reported. The complaint was dismissed.

We will first consider whether the Circuit Judge erred in holding that the deed was not void under the assignment law. Sections 2146 and 2147 of the Revised Statutes are as follows: "2146. Any assignment by an insolvent debtor of his or her property for the benefit of his or her creditors, in which any preference or priority is given to any creditor

or creditors of the said debtor by the terms of the said assignment over any other creditor or creditors other than as to any debts due the public, or in which any provision or disposition of property so assigned is made or directed other than that the same be distributed among all creditors of said insolvent debtor equally in proportion to the amount of their several demands, and without preference or priority of any kind whatsoever save only as to debts due the public, and save only as to such creditors as may accept the terms of such assignment and execute a release of their claim against the debtor, and except as hereinafter provided, such assignment shall be absolutely null and void and of no effect whatsoever." "2147. If any person, being insolvent, within ninety days before the making of any assignment by him or her of his or her property for the benefit of his or her creditors, with a view to give a preference to any creditor or person having a claim against him or her, or who is under any liability for him or her, procures or suffers any part of his or her property to be attached, sequestered or seized on execution, or makes any payment, pledge, assignment, transfer or conveyance of any part of his or her property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, transfer or conveyance, or any part of his or her property, or to be benefitted thereby or by such attachment, having reasonable cause to believe such person to be insolvent, and that such attachment, sequestration, seizure, payment, pledge, assignment or conveyance is made in fraud of the provisions of this chapter, the same shall be void, and the assignee may recover the property or the value of it from the person so receiving it or so to be benefitted. Nothing, however, in this section shall be construed to invalidate any loan of actual value, or the security therefor, made in good faith, and upon a security taken in good faith on the occasion of the making of such loan, or any security *bona fide* made for advances." In *Verner* v. *McGhee*, 26 S. C., 248, 2 S. E. R., 113, the Court says: "The assignment act has no appli-

cation unless there is either an actual assignment or a state
of facts fully proved or admitted, which in conscience and
equity are tantamount to an assignment with unlawful pref-
erences." Mr. Chief Justice McIver reviews the authorities
in *Porter* v. *Stricker,* 44 S. C., 183, and concludes the opin-
ion of the Court in the following language: "From this
review of the cases upon this subject in this State, the fol-
lowing propositions applicable to the case under considera-
tion are clearly deducible: 1st. That an insolvent debtor
may, by a *bona fide* mortgage, which is intended merely as
a security for a just debt, prefer one of his creditors. 2d.
That if the mortgage is really designed to operate, not as a
security merely but as a means of transferring the debtor's
property to the favored creditor in preference of the other
creditors, then it is void under the assignment law. 3d.
That the question as to what was the intention is a question
of fact." The Court, in *Finley* v. *Cartwright,* 55 S. C.,
198, 33 S. E. R., 359, says: "In order to set aside a convey-
ance as void under sec. 2147, Revised Statutes, it is neces-
sary to show (1) that the grantor was insolvent at the time
of the conveyance; (2) that the conveyance was made with
a view to give an unlawful preference; (3) that the grantee
had reasonable cause to believe that the grantor was insol-
vent at the time of the conveyance; (4) that the grantee had
reasonable cause to believe that the conveyance was made in
fraud of the assignment law; (5) that the conveyance was
executed within ninety days previous to the execution of a
valid deed of assignment." Citing *Haynes* v. *Hoffman,* 46
S. C., 166. In *Lamar* v. *Poole,* 26 S. C., 441, 2 S. E. R.,
322, the Court uses this language: "The action below as-
sailed the paper in question as a violation of sec. 2014, Gen-
eral Statutes. It should be remembered that the question of
fraud is not involved under that section. A paper may be
fraudulent at common law or under the Statute of Eliza-
beth, and might be avoided on that ground by proper pro-
ceedings to that end, and yet it might stand free from attack
under sec. 2014, *supra.* Two things must concur under

that section to render an instrument void: 1st, an assignment, and 2d, a preference given in said assignment; and it is the preference which the act inhibits, whether that preference be founded upon a *bona fide* claim or a fraudulent one." By reference to sec. 2146, it will be seen that the statute renders null and void any assignment by an insolvent debtor of his property for the benefit of his creditors, in which any preference or priority is given to any creditor of the debtor *by the terms of the assignment* over any other creditor other than as therein provided; nevertheless, the doctrine is settled beyond controversy by the decisions of this Court, that a deed or other instrument of writing which is intended to have the force and effect of a formal assignment for the benefit of creditors, is as obnoxious to the provisions of the statute as if the insolvent debtor had attempted by the terms of a formal assignment to give the preference prohibited by the assignment law. It will also be observed that sec. 2147 is not, in express terms, made applicable to cases in which the debtor did not make a formal assignment for the benefit of creditors within ninety days after the execution of the deed or other instrument intended to give the preference prohibited by that section. The necessity for the party attacking the deed to show (1) that the grantor was insolvent at the time of the conveyance, and (2) that the conveyance was made with a view to give an unlawful preference, arises whether the case comes within the provisions of sec. 2146 or sec. 2147, by the terms of said sections. While it is true that the requirements that the party attacking the deed must show (3) that the grantee had reasonable cause to believe that the grantor was insolvent at the time of the conveyance, and (4) that the grantee had reasonable cause to believe that the conveyance was made in fraud of the assignment law, are not applicable in the absence of a formal assignment within ninety days after such deed, these requirements are, however, but the declaration of salutary rules which equity and good conscience demand should be enforced, whether the case arises under sec. 2146 or sec. 2147. Applying

these principles to the facts of the case, this Court is satisfied that the testimony fails to show that either the first, second, third or fourth of said requirements was sustained by the evidence.

We will next consider whether the said deed was void under the Statute of Elizabeth. The rule is thus stated in *Magovern* v. *Richard,* 27 S. C., 286, 3 S. E. R., 340: "Was the mortgage void under the statute of fraud? To be void under said statute or at common law, it should be made to appear that it was either without consideration or that it was *mala fide,* one or both. In other words, for a paper of the kind to be invulnerable, it should be based upon a valuable consideration and be a *bona fide* transaction. Now, there can hardly be a doubt—in fact, it is not denied—that Bollman Brothers held a large claim on Richard, which this mortgage was intended to secure; so that one of the elements necessary to sustain it is present. Was it *bona fide* or was it *mala fide* as to both parties to the instrument? because this is necessary to avoid it. What is *mala fide?* It must be an intent not simply to assert one's own rights, but, in addition thereto, to defeat the rights of another, participated in, as we have said, by both parties to the instrument." The last mentioned case is cited with approval in the recent case of *McElwee* v. *Kennedy,* 56 S. C., 154, 34 S. E. R., 86, in which the Court also uses this language: "To annul for fraud a deed based upon a valuable consideration, it must not only be shown that the grantor intended thereby to hinder, delay or defraud creditors, but it must also appear that the grantee participated in such fraudulent purpose. Even if we were to assume that there is evidence of *mala fides* in the grantor, yet if the sole purpose of the grantee was to secure her claims, having no intent to hinder, delay or defeat other creditors, her title cannot be affected by the *mala fides* of the grantor. The evidence fails utterly to show any intent on the part of the grantee to defraud her husband's creditors, and merely shows a purpose to secure her own *bona fide* claims. Conceding

the insolvency of the firm of which the grantor was a member, it does not appear that the grantee was aware of it; and if she was aware of it, that would not show fraud in her, since a *bona fide* creditor has the right to obtain a transfer of property from an insolvent debtor at a fair price, for the sole purpose of securing or paying the debt." This Court is satisfied that the testimony fails to show such facts as constitute fraud, and that the Circuit Judge was not in error in concluding that the deed was not void under the Statute of Elizabeth.

These views practically dispose of all the exceptions except the tenth, which is as follows: "X. Error in holding that the recital in the deed of 109 acres from Nancy E. Ponder to W. J. Ponder, to the effect that W. J. Ponder had paid for the land, &c., is only in the nature of a receipt or admission, which can be explained, and that it had been conclusively explained. Whereas, he should have held that she, as well as those who claim under her, are estopped now from disputing said recital." The cases of *Daniel* v. *Moses*, 12 S. C., 138-9, and *Moffat* v. *Harden*, 22 S. C., 27, and 20 A. & E. (1st ed.), 459, *et seq.*, show that this exception cannot be sustained, for the reasons stated by the Circuit Judge.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.