9904

MILLS v. SUMTER LUMBER CO.

(95 S. E. 355.)

1. Fraudulent Conveyances—Intent—Form of Writing.—Though two writings be framed in identical words, one may be an assignment with a preference, and the other a *bona fide* mortgage depending upon the question of intent.

2. Fraudulent Conveyances—Mortgage—Preferences.—To prevent a transaction on its face a mortgage being declared void as a preferential assignment, it is immaterial that the conveyance was made mediately to the trustees instead of directly to the beneficiary.

3. Mortgages—Form of Instrument.—Under Civ. Code 1912, sec. 3460, declaring what constitutes a mortgage, a paper on its face a conveyance of property to secure the payment of a debt is the form and essence of a mortgage.

4. FRAUDULENT CONVEYANCES—EVIDENCE—SUFFICIENCY.—The mere fact that the grantee in an instrument conveying land to secure a debt stated that he was the owner of the property did not make the conveyance void, as a preferential assignment since such statement was merely his conclusion.

5. FRAUDULENT CONVEYANCES—EVIDENCE—SUFFICIENCY.—Evidence *held* to show that an instrument in form a deed was in fact made to secure a debt, and intended as a mortgage, and not a preferential assignment.

Before SHIPP, J., Sumter, —— term, ——.    Affirmed.

Action by W. A. Mills against the Sumter Lumber Company and others. From a decree of the Circuit Court, affirming, *pro forma,* a decree of the master, plaintiff appeals.

The writing involved is as follows:

This deed made the 6th day of March, 1912, between Sumter Lumber Company, a corporation chartered and doing business under the laws of the State of South Carolina, party of the first part, Fred. Harper and Leon Goodman, Trustees, parties of the second part, and American National Bank of Lynchburg, Va., party of the third part:

Whereas, At a meeting of the stockholders of the said Sumter Lumber Company held at Sumter, S. C., on the 4th day of March, 1912, at which meeting duly called there was present a majority of the stockholders of said company, a resolution was unanimously adopted authorizing and directing the president and secretary of said Sumter Lumber Company to convey by a good and sufficient deed, for certain considerations set out in said resolution, hereinafter described property to the said parties of the second part:

Now, this deed witnessed that, for and in consideration of the sum of five dollars in hand paid the said party of the first part by the said parties of the second part, the receipt whereof is hereby acknowledged, the said party of the first part doth hereby grant, bargain, sell, and convey, with general warranty of title unto the said parties of the second part, the following described real estate: A lot of land in

the city and county of Sumter; also a considerable amount
of sawmill machinery, fixtures, office supplies, etc.—but
upon this trust to secure the payment of the sum of thirty-
five thousand dollars to the said party of the third part,
with interest thereon at 6 per cent. per annum, evidenced
by the negotiable note of the said party of the first part
dated November 3, 1911, for thirty-five thousand dollars,
and payable to the said party of the third part four months
after date, and to secure all renewals and extensions of said
note, either in whole or in part.

The said party of the first part covenants that it will pay
all taxes and assessments on said property, that it will keep
the buildings thereon and personal property above described
insured in some solvent company in at least the sum of
twenty-five thousand dollars for the benefit of this trust, and
should it fail to pay said taxes, or take out said insurance,
the same may be done by the party of the third part, and
any sums so paid by the party of the third part, and any
sums so paid with interest, shall become a part of the debt
hereby secured.

If default be made in the payment of said note, or any
renewal or extension of the same, as the same becomes due,
then the said trustees, or either of them, upon being requested
so to do, by the said party of the third part, and after duly
advertising the time and place of sale in such manner as
they may deem best, shall proceed to sell the property hereby
conveyed by public auction on the premises for cash as to
enough to defray the cost of executing this trust, the
whole of the debt herein secured, and any sum paid for
taxes, assessments, or insurance, and as to the residue upon
such terms as the said party of the first part shall direct.

In case of a sale under this deed, the parties of the second
part shall be entitled to a commission of 5 per cent. upon the
gross amount of such sale, and should the debt herein secured
and the obligations herein assumed be fully paid after a dis-

charge, then this deed shall be released at the proper cost of the grantor.

The said party of the first part covenants that it has the right to convey said property, that it has done no act to incumber the same, that in case of sale under this deed, the purchaser from said trustees shall have quiet and peaceable possession of said property, free from all incumbrances, and that until executed such other and further assurances of title as may be requisite.

*Messrs. L. D. Jennings* and *A. S. Harby,* for plaintiff-appellant, submit: *The trust deed is void under sections 3455, 8732 and 3733 of the Civil Code of 1912:* 87 S. C. 495; Cheves Eq. 71; 3 S. C. 266; 23 S. C. 416.

*Messrs. Lee & Moise,* for defendants-respondent, submit: *The instrument in question is a deed of trust in the nature of a mortgage:* 27 Cyc. 966; 3 S. C. 266. *The instrument is not void under the Statute of Elizabeth:* 38 S. C. 437; 28 S. C. 444; 64 S. C. 355; 44 S. C. 183 (pp. 191-192); 27 S. C. 386; 56 S. C. 154; 4 Cyc. 280; folio (11); 27 S. C. 285; 12 S. C. 154 (p. 167); Rice Eq. 300; Rice Eq. 73; 26 S. C. 449; 64 S. C. 354; 87 S. C. 495; 105 S. C. 60; 91 S. C. 437; 74 S. E. 1072.

*Messrs. Harmon & Goodman,* also for defendants-respondent, submit: *The trust deed is not void as violative of the Statute of Elizabeth, or sec. 3455 of the Civil Code of 1912:* 56 S. C. 154, 34 S. E. 86; 64 S. C. 354, 42 S. E. 172; 17 S. E. 255; 17 S. E. 698; 3 S. E. 340; 19 S. E. 1002; 89 S. E. 467; 2 S. E. 113; 136 U. S. 223; 24 Atl. 403; 38 S. E. 563, 573; 49 W. Va. 150; 17 S. E. 696, Words & Phrases, vol. I, 572-3-4; Words & Phrases, vol. I (second series), 313-4; 2 S. E. 113; 3 S. E. 322; 3 S. E. 340; 7 S. E. 823; 17 S. E. 253, 696; 19 S. E. 1002; 21 S. E. 635; 42 S. E. 165; 21 S. E. 640; 23 S. C. 406; 2 S. E. 325; 11 S. E. 337; 7 S. E. 838; 85 S. E. 595; 3 S. E. 342.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Appeal from a decree of the Circuit Court which affirmed *pro forma* a report of the master. The action was brought by a judgment creditor of the Sumter Lumber Company, hereinafter called the Lumber Company, to set aside a transaction between that company and the American National Bank of Lynchburg, Va., hereinafter called the Bank. The alleged infirmity in the transaction was: (1) That it was in violation of the statute governing assignments by insolvent debtors; and (2) that it was in violation of the Statute of Elizabeth, declaring what are fraudulent conveyances. The transaction is primarily evidenced by a paper writing made March 6, 1912, by the Lumber Company to the Bank and to Harper and Goodman, trustees. Let it be reported. There are seven exceptions, which are too voluminous to report. We shall compass the essential issues of law and fact which they make.

The case turns largely upon the character of the paper writing referred to. The argument of the appellant is that the paper is an assignment with preference, and, therefore, in violation of the statute. The argument of the respondents is that the paper is but a mortgage made by the Lumber Company to the Bank to secure the payment of a *bona fide* debt, and, therefore, within the law. The Court found the latter postulate, and that is the major issue in the case, and its determination practically puts an end to the controversy.

We take up for consideration the first issue: Two paper writings may be framed in identical words; yet, on all the testimony, one may be held to be an assignment with preference, and the other may be held to be a *bona fide* mortgage to secure a debt; and, therefore, the one invalid and the other valid. The issue in each case is dependent upon the intention of the parties to the transaction; and that is to be gathered from all the testimony in

the case. The transaction is evidenced by the paper writing and by all the circumstances of the case disclosed by the testimony. Turning first to the paper, the words of it indicate plainly that the transaction was intended for a mortgage and to secure a debt.

It is immaterial that the conveyance was made mediately to the trustees instead of directly to the Bank. That is a common practice in large transactions, and it does not alter the essential character of the instrument. The statute does not prescribe the form of a mortgage.

On its face the paper is a conveyance of property to secure the payment of a debt; that generally is the form and essence of a mortgage. See section 3460, Code of Laws, and *Thayer v. Cramer,* 1 McCord Eq. 395. The instrument declares that it was made "to secure the payment of the sum of $35,000" to the conveyee. There is also a stipulation by the conveyor to pay taxes on the property and to keep up the insurance. There is a clause also which previses a default in payment, and the consequences of it. The direction as to the "residue" is not unusual or improper; in the foreclosure of a mortgage the residue is generally at the direction of the mortgagor. The statute prescribes neither the form nor contents of a technical deed of assignment for the benefit of creditors. The instant paper does not by its language, however, purport to be such a deed, nor are the contents of it apt for such a deed. All the parts of the instrument are those of a mortgage, and not of a technical deed of assignment.

The respondents suggest, however, that when the plaintiff undertook to subject the property to sale under his execution, the Bank and the trustees under the paper, by their attorneys notified the plaintiff not to sell because the property "is owned by" the Bank and trustees. And the respondents say that was an admission that the paper was not intended for a mortgage. But that was a

matter of opinion merely. The right and interest of the Bank and the trustees was fixed by the paper writing, not by the conveyee's opinion of it. Besides that, the said notice qualified the ownership, by affirming that it was "by virtue of a deed of trust."

The other circumstances of the transaction, revealed by the plaintiff's testimony, do not belie the paper writing. That testimony only tends to prove that the Lumber Company was indebted to the Bank in the fall of 1911 in at least the sum of $25,100; that the company owed other debts; that the company operated the plant until January, 1911, when it was leased to the plaintiff's brother and operated by him until September, 1911; that in the fall of 1911 the company was insolvent.

The testimony for the defendants tends to prove that the Bank made the first loan to the company of $10,000 in 1905; that the loans increased, and on November 31, 1911, the Lumber Company owed the Bank $33,500, for which the Bank only held the company's four-month note made that day; that at the execution of that note the Lumber Company surrendered other good personal security for as much as $24,000; that on November 1, 1911, the Lumber Company agreed by parol to make the deed of trust to secure the debt of $35,000, but it was not done until March afterwards; that when the notes for $35,000 were made the Bank had not inspected the plant, but relied on the reports of the company's officers, who were chiefly of Virginia, and the Bank had no knowledge of the Lumber Company's insolvency.

The conclusion of the master, therefore, that the Lumber Company was of doubtful solvency in November, 1911, and insolvent in March, 1912, but that the Bank had no notice of the fact, is fully supported by the testimony.

We then conclude on the facts that the other testimony supports the paper writing; that the intent was to secure a a debt, and not to give a preference. If that be so, then the transaction was plainly lawful. *Porter v. Stricker,* 44 S. C. 193, 21 S. E. 635; *Lenhardt v. Ponder,* 64 S. C. 354, 42 S. E. 169.

The other ground of attack on the transaction is that it violated the Statute of Elizabeth. The essence of that statute is that it avoids: (1) Those conveyances made upon no consideration; or (2) those conveyances made upon consideration and with intent on the part of the conveyee (as well as the conveyor) to defraud other creditors of the conveyor.

The master concluded there was no testimony to sustain the allegation of a fraudulent intent on the part of the Bank, and that conclusion was manifestly right, for there is no testimony to the contrary.

The decree of the Circuit Court is affirmed.