## 9777

### WISE v. CAROLINA HAIL INS. CO. *ET AL.*

#### (94 S. E. 535.)

1. INSURANCE—REGULATION—STATUTORY PROVISIONS.—Civ. Code 1912, sec. 2701, provides that before licensing any insurance company to do business in the State the insurance commissioner shall require such company to deposit with him an approved bond or approved securities in amounts therein specified, and that if a bond be given it shall be conditioned to pay "any judgment" entered against the company. Section 2708 provides that it shall be unlawful for any insurance company to transact business in the State unless possessed of at least $100,000 of surplus or capital, or unless in lieu thereof it shall file with the insurance commissioner the certificate of the official of some other State that he holds on deposit or in trust, for the benefit of all policyholders or members, securities worth at least $100,000, or unless in the absence of such capital or deposit it shall deposit with the insurance commissioner valid securities aggregating $10,000 or a bond conditioned to pay "any judgment * * * upon a policy of insurance" against the company. *Held,* that as applied to a case in which the company did not give a bond, but deposited securities, the two sections are not repugnant, nor is section 2701 limited to domestic companies, or section 2708 to foreign companies.

2. INSURANCE—INSOLVENCY OF INSURANCE COMPANIES—ASSETS AND RIGHTS OF POLICYHOLDERS.—Under Civ. Code, secs. 2701 and 2708, where an insurance company executed an instrument providing that it thereby deposited with the insurance company certain securities therein specified for the purposes set forth in the laws of the State, such deposit, on the insolvency of the corporation, was first applicable to the payment of claims of policyholders and members, and an assignment of the deposit by the company to secure loans was inoperative as against the rights of policyholders.

3. INSURANCE—INSURANCE COMPANIES—POWERS—ASSIGNMENTS.—Civ. Code 1912, sec. 2850, authorizing corporations to borrow money and make notes, etc., and on notice and a vote of the stockholders to secure payment of obligations by mortgages or deeds in trust, provided that no such notice or vote shall be required to enable the proper officers to secure the payment of any temporary loan, by a pledge or hypothecation of any chose in action "held or owned" by such corporation, does not deprive an insurance company of power to assign premium notes thereafter to be taken in the ordinary course of business to secure a loan, and such an assignment was not invalid because the notes were not *in esse* at the date of the assignment.

4. INSURANCE — INSOLVENCY — PREFERENCES. — An assignment by an insurance company, which was then solvent, but which subsequently became insolvent, of premium notes then on hand or thereafter taken in the ordinary course of business to secure loans made to it, was not unlawful as a preference or against public policy.

5. INSURANCE—INSOLVENCY OF INSURANCE COMPANIES—ASSETS AND RIGHTS OF POLICYHOLDERS.—Where the securities deposited with the insurance commissioner by an insurance company which became insolvent exceeded the amount required to be deposited by the statute, policyholders were only entitled, as against one to whom the company had·assigned the deposited securities, to the amount required by statute.

Before DeVore, J., Edgefield, August, 1915.   Modified.

Action by W. W. Wise against the Carolina Hail Insurance Company and another. Judgment for plaintiff, and defendants appeal.

*Messrs. W. F. Stackhouse, L. D. Lide* and *H. S. McCandlish,* for appellants, cite: *As to deposit of premium notes with insurance commissioner:* Sections 2701, vol. I, Code 1912. *Assignment of premium notes to creditors:* Corpus Juris, vol. V, pp. 866 and 868; 33 S. C. 451; Black on Bankruptcy, sec. 592, p. 1248; 17 L. R. A. (N. S.), pp. 935 and 944; 74 S. C. 368. *Right of creditors other than policyholding creditors, to prorate with policyholding creditors in fund deposited with insurance commissioner:* 74 N. C. 100; 173 U. S. 131; 43 L. Ed. 640; 45 S. C. 606. *Power of Court to compel insurance commissioner to deliver securities, deposited with him, to receiver:* 22 Cyc. 1390.

*Messrs. J. William Thurmond, Dial & Todd,* for respondent, cite: *As to the right of the policyholder creditors to first share in the distribution of the securities deposited with the insurance commissioner:* Secs. 2701, 2708 and 2732; 83 S. C. 427; 96 S. C. 321; 86 S. C. 96; 96 S. C. 313. *Power of Court to compel insurance commissioner to deliver securities to receiver:* Kent's Commentaries 307; 15 Howard 304; 30 S. C. 206; 38 L. R. A. 97. *Assignment of premium*

*notes to loan creditors:* 64 S. C. 364; 5 Corpus Juris 852, 854 and 855; 14 S. C. 114.

July 19, 1917. On rehearing December 3, 1917.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The appeal is from a decree of the Circuit Court. The subject involved is the estate of the defunct Carolina Hail Insurance Company. The action involves the administration of that estate.

The receiver of the company has in hand a small fund for its creditors, and the only issue is the right marshaling of the fund betwixt the creditors. The creditors are of two classes: first, those who hold unpaid policies of insurance; and, second, those who loaned money to the corporation. The fund also is of two classes: one a "deposit" of some $10,000 made by the company with the insurance commissioner pursuant to statute; another the notes made to the company by policyholders for their premiums, and referred to as premium notes. And the issue betwixt counsel is this: Whether that "deposit" is subject first to answer the demand of the policyholding creditors; or whether it is liable both for the demand of the policyholding creditors and the money-lending creditors. That is one of the only two real questions in the case, though all told there are, on one side and another, 14 exceptions. The Court held, and we think rightly, that the first postulate is the right one, that the policyholding creditors take the fund.

Whatever confusion there may be in the premises arising out of the enactment of two classes of statutes, moving, so to speak, on parallel lines, first, that statute which requires insurance companies to deposit securities with the State treasurer to be subject to any judgment upon a *policy of insurance* (22 Stats. 461; act of 1897; section 2708, Code of Laws); and, second, and subsequently, that statute which establishes an insurance department in

the State, directing the insurance commission to require the deposit with him of a bond or securities, the bond conditioned to pay *any judgment* entered against the company. (26 Stats. 12, sec. 13, act 1909; section 2701, Code of Laws.)    Italics, where used, are supplied.

The appellants insist that section 2708 was inserted by mistake of the codifier; that the two sections are inconsistent; that the instant case is governed solely by the provisions of section 2701, because section 2701 stands for the last legislative enactment.    *Insurance Co. v. Bradley,* 83 S. C. 427, 65 S. E. 433.    The appellants further insist that if section 2708 is a part of the statute law, and is reconcilable with section 2701, it must be only on the theory that section 2708 is referable alone to foreign insurance companies.    It is not suggested that section 2701 refers only to domestic companies.

There is no warrant to conclude that section 2708 was erroneously inserted in the Code.    That is a mere surmise. In 1908, the same year in which the insurance department was established by statute, and in the same month, the legislature enacted a statute "to require all insurance companies incorporated under the laws of this State to secure their policyholders."    25 Stats. 1109.

A portion of that statute was written into section 2708 of the Code, and a portion of it was written into section 2701 of the Code.    And the first section of the act which established the insurance department charges that department "with the enforcement and execution of the laws now in existence and which may hereafter be passed relating to insurance."    The Code, therefore, embraces both classes of the acts; those regulating insurance companies and those establishing the insurance department.

Nor do we think the two sections referred to are meant, the one (section 2701) to refer to domestic companies, and the other (section 2708) to refer exclusively to foreign companies.    Nor do we think they are repugnant, when applied

to the instant case. These two subjects are allied; they, therefore, rest in the same considerations.

Section 2708 embodies the first act on the subject; it prohibits any insurance company to do business here unless (1) it has specified capital, or (2) unless it shall deposit securities in another State, or (3) unless it shall deposit securities with, or bond with, the State treasurer. The numerals are supplied. The first condition embraces foreign and domestic companies; the second condition refers manifestly to foreign companies; the third condition embraces both foreign and domestic companies.

The only suggested repugnance betwixt section 2701 and section 2702 is that before stated, to wit, in the one instance the deposit is subject to the claim of any creditor, while in the other it is subject to the claim of policyholding creditors alone. But there is no need to stumble, in the instant case, on that inconsistency, if such it be; because the deposit in the instant case was not a bond, nor anything like a bond.

The deposit was plainly of securities; the paper writing made to evidence the deposit reads thus: "Whereas, the laws of South Carolina require any insurance company, before being licensed to do business in this State, to deposit with the insurance commissioner securities or a bond in the required amount; therefore, the Carolina Hail Insurance Company, in accordance with the said laws, does hereby deposit with the said insurance commissioner of South Carolina, the following securities, with power of substitution, and does hereby assign said securities, or such substitution as may be made hereafter, for the purposes set forth in the laws of the State of South Carolina."

No provision of either of the two sections expressly declares what the legislative intent was in requiring a deposit of securities; nor does the quoted paper writing declare what was the intent of the Carolina Hail Insurance Company in making the deposit, or of the insurance commissioner in receiving it. But section 2708 does imply that the deposit

is "for the benefit of all policyholders or members of such company." That section prohibits insurance companies to do business in this State, unless (1) possessed of at least $100,000 of capital, or (2) *in lieu thereof* a certificate with the commissioner that the company has deposited with some trustee out of the State securities worth $100,000 *for the benefit of all policyholders or members of such company,* or (3) *"in the absence of such capital or deposit,"* then a deposit with the commissioner valid securities worth $10,000. (The italics and numerals are supplied.)

Manifestly all the three named conditions precedent were exacted for the same end; that end is expressly named in the second condition; by necessary implication, therefore, it inheres in the first and third conditions. We are of the opinion, then, that the deposit of securities that was made is first applicable to the payment of the claims of policyholders and members of the corporation, and that the assignment of those deposits by the company to creditors for money loaned the company was inoperative to defeat their primary liability to the claims of policyholders.

We turn, now, to the other fund in the receiver's hands. The practice of the company was to insure the crops of members against loss by hail in the spring and summer months; the premium for such insurance was usually not paid down in cash, but by a note of the insured then executed for it, payable in the fall months. These notes were assigned to the three appealing creditors to secure them for money which they advanced in the spring and summer months to pay the officers of the company, to pay those agents who solicited insurance, and to pay losses under the terms of the policies.

No suggestion has been made by the attacking creditors that the loans by the defending creditors were not made; that is assumed, therefore, to be true. The only suggestion is that the insurance company had no lawful right to secure the payment of the loans by the assignment to the lending

creditors of the premium notes then existent and those thereafter to be made.　The assignment by the company included (1) premium notes "now on hand; (2) which may hereafter be taken in the ordinary course of business."　The numerals are supplied.

The Circuit Court ordered that the first class, or the proceeds of them where collected, should be turned over to the receiver; but the Court assigned no reason and cited no authority for that direction.　The order was equivalent to holding that the assignment of the premium notes of the first class was unlawful.　The Court held, further, that the assignment of the premium notes of the second class was contrary to public policy, null and void; because the assignment amounted to an unlawful preference, and because the company had no power to make such an assignment.

The respondents suggest a difference betwixt the power of a corporation to assign premium notes "now in hand" and premium notes "hereafter to be taken."　And they cite to sustain that view section 2850 of the Code of Laws. The relevant part of that section reads thus: "To borrow money for the purpose of carrying out the objects of its charter; to make notes, bond or other evidences of debt; and upon a vote of the stockholders, had after such notice as is provided in section 2103, to secure the payments of its obligations by mortgage or deed in trust on all or any of its property and franchises, both real and personal: *Provided, however,* That no such notice or vote shall be required to enable the proper officers of any corporation to secure the payment of any temporary loan or promissory note or otherwise by pledge or hypothecation of any chose in action held or owned by such corporation."

We think such a view of the statute is a too narrow one. The statute is dealing with corporate powers; it gives a power which well-nigh every corporation already had, to wit, the power to borrow money and make notes therefor,

and incidental to that power to give security for the payment of the debt.   7 R. C. L. 593, *et seq.*

All the statute does is to prescribe a special procedure by the corporation, by notice, etc., in cases where the corporation proposes to make a mortgage on a deed in trust.   And the statute expressly declares that such procedure need not be had where the security consists in the hypothecation of choses "held or owned by such corporation."   The words held or owned were manifestly not used to limit the corporation's power to the hypothecation of choses actually then held or owned.   It is the same as if the statute had empowered the corporation to hypothecate its choses for the payment of the corporate debts; that was the purpose of the enactment.

Nor is the assignment of the premium notes invalid for the reason that the notes were not then *in esse*.   The rule of of law is stated in *Parker v. Jacobs,* 14 S. C. 114, 37 Am. Rep. 724, and the facts of the instant case being the case within that rule.

The conclusion of the Circuit Court that the assignment of the choses amounted to a violation of one statute against preferences, is unsound.   That statute has been construed so often that there is no need to do so now.   We think the case cited by the respondent to sustain the order below does the contrary; it establishes the lawfulness of the instant transaction.   *Lenhardt v. Ponder,* 64 S. C. 354, 42 S. E. 169.

The several assignments of the premium notes were made betwixt April, 1913, and May, 1914.   The Court did not find that the company was then insolvent.   The company was sued and a receiver was appointed in May, 1916.

We have considered the whole testimony, and there is no warrant to conclude from it that the company was insolvent betwixt April, 1913, and May, 1914.   The treasurer testified that prior to 1914 as much as 90 per cent. of the premium notes had been usually collected, and had so much

been collected in that year the company would have had sufficient to pay its obligation. There is nothing to the contrary. If all the company was not insolvent when the assignments were made, there was no preference. The end of the corporation was hastened by the action for a receiver in May, 1915.

The conclusion of the Circuit Court that the assignment of the premium notes was beyond the company's power has been already considered. There is no apparent reason to hold that the transaction was against public policy. The largest borrowers of money are going concerns; the life of a business concern depends upon its capacity to borrow.

There is no particle of testimony from which the Court might have concluded that the transaction was fraudulent and void under the Statute of Elizabeth. The Court did not so conclude, and it would not have been warranted to so conclude. The respondent's exception thereabout is overruled, and the decree below is modified according to the views we have expressed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES HYDRICK and WATTS concur.

MR. JUSTICE FRASER, disqualified.

On rehearing. PER CURIAM. We have considered the petition of the loan creditor, and we conceive it to be well made.

We overlooked the fact that notes in excess of $10,000 had been deposited by the insurance company with the commissioner, to wit, $12,500.

The policyholders, we have held, are entitled by statute to have $10,000 of these notes, or so much as will realize that sum; but the excess belongs to the loan creditors by virtue of the assignment to them.