## 15412

### POWELL v. GARY ET AL.

(20 S. E. (2d), 391)

*Mr. H. H. Edens,* of Columbia, Counsel for Petitioner,

*Messrs. Wise & Whaley* and *Mr. John C. Payne,* all of Columbia, as Counsel for Frank B. Gary, Jr., one of the Respondents, filed a Return to the Rule To Show Cause and a Brief of Argument.

*Mr. Hunter A. Gibbes,* of Columbia, filed a Return as Counsel for Grace Wilson Pow and thirteen other Respondents.

*Mr. George D. Levy* and *Mr. Thos. W. Lemmon,* both of Sumter, filed a Return as Counsel for Sara Brogdon, on her behalf and that of all other policy holders similarly situated.

*Mr. W. E. Bowen* and *Mr. C. S. Bowen,* both of Greenville, filed a Return and Brief as Counsel for Respondents John J. Rowley, Raymond D. Beard and Dakyns B. Stover, Jr.,

May 14, 1942.

The Opinion of the Court was delivered by Mr. Associate Justice Stukes:

This proceeding was heard in the original jurisdiction upon the order of Mr. Associate Justice Baker dated November 28, 1941, whereby the respondents were ruled to show cause at the February term of the Court why they should not be enjoined from claiming or attempting to assert any claim or judgment in any manner against the funds of Unity Life Insurance Company now in the hands of Frank B. Gary, Jr., as the officer of the Court, constituting the insurance reserves of the company, except such claims and judgments as arise out of the maturity of certificates of insurance issued by the company, according to their respective tenor and effect; and meanwhile the respondents and others in like circumstances were so enjoined.

Pursuant to the terms of the order, it was published for three weeks in *The State,* a newspaper published in the City of Columbia and of general circulation throughout the State, and there was also published a notice that the verified petition upon which the order was issued was filed with the Clerk of this Court and likewise there was published notice of the appointment, *nisi,* of a guardian *ad litem* for all respondents under disability.

In addition to routine contents the prayer of the petition was for judgment in effect that the funds above referred to, to the extent that they are necessary reserves against the policies now in force, that is those policies upon which the premiums have been paid as they fell due, either to the company or Gary as executive vice-president, which premiums under the terms of the statutes presently referred to, the by-laws of the company and the policy provisions, are exclusively applicable to that purpose and that they be used only to pay such outstanding policies as they mature or are surrendered for cash, in accord with the policy provisions.

We find and hold that the proceeding is a proper one for consideration in the original jurisdiction of this Court and the conditions of Rule 20 have been met. *King v. Aetna Ins. Co.,* 168 S. C., 84, 167 S. E., 12; *State v. John P. Nutt Co.,* 180 S. C., 19, 185 S. E., 25.

It is a "class" suit (Section 406, Code of 1932) and representatives of all classes as claimants against the fund have been made parties by service of process upon representatives of the respective classes whereby the members thereof are properly before the Court, and Gary, the custodian of the fund, is likewise before the Court; the classes of respondents are: (1) Policyholders who have sued the company for fraud and deceit in the issuance of policies, the collection of premiums or in the breach; (2) policyholders who discontinued the payment of premiums, whereby their policies lapsed, before the appointment of Mr. Gary; and (3) policyholders who allowed their policies to lapse for nonpayment of premiums after Mr. Gary's appointment.

In behalf of all of the above classes returns to the rule and briefs have been filed and the controversy argued fully and well. It is necessary that some history be given of the circumstances making the present predicament of the claimants against the fund which is now in *custodia legis* in another action, as will be seen.

Unity Life Insurance Company was formed in 1934 as a fraternal benefit association pursuant to the provisions of

Article 3 of Chapter 157 of the Civil Code of 1932, but its management has not added luster to its fair name. "Behold how good and how pleasant it is for brethren to dwell together in unity." 133rd. Psalm 1.

The company undertook to issue so-called "Contingent Endowment" policies whereby the policyholders were promised that they would be placed in groups of twenty-five and when a policy matured by death of the holder, his beneficiary would be paid the face amount of the policy and the other policy in the group which was at that time the oldest would also be then matured and upon cancellation of it the insured would be paid the amount of insurance; and the premium rates were accordingly fixed at about double what they would have been for ordinary life insurance. *Unity Life Ins. Co. v. Beasley,* 64 Ga. App., 277, 13 S. E. (2d), 32.

Validity of this unusual form of policy is treated in another decision filed simultaneously with this, that in the appeal of Gary as executive vice-president in his proceeding against Atkinson and others in the case of *Morris v. Unity Life Insurance Co. et al.,* 20 S. E. (2d), 388 referred to hereinafter.

But the Unity Company was unable to fill the groups and the scheme was not put fully into effect. Facing difficulties in carrying out its high promises, the company employed experts to procure the conversion of the outstanding contingent endowment policies to another form which was done in many cases. About 1939 suits began to be filed charging the company with fraud and deceit, and in January, 1940, a policyholder by the name of Bell brought suit in the Court of Common Pleas for Richland County against the company and its officers and directors whereby the appointment of a Receiver and liquidation were sought, but the action was dismissed as to the company on the ground that Sections 8061 and 8062 of the Code permit only the Attorney General to sue for the liquidation of a fraternal benefit society, but meanwhile an injunction was issued preventing the in-

stitution of other actions. That action is still pending against the officers and directors of the company.

Shortly after its dismissal against the latter one Morris, a policyholder, brought another action in February, 1940, against the company and its officers and directors which was referred to the Master for Richland County who took considerable testimony, before this Court now, but in February, 1941, on plaintiff's motion the action was recalled from the Master by the Court and Frank B. Gary, Jr., was appointed "executive vice-president" of the company with the powers and authority granted to Receivers by the terms of Section 584 of the Code, and with express power to take over and hold subject to the order of the Court all of the property, papers and rights of the company and to continue to operate same to the extent of paying current expenses, accepting policy premiums and paying death benefits; with further power to "investigate the present status of the said defendant and advisable means for conserving the assets * * * and report back to the Court his findings and recommendations," with other express powers not necessary now to relate; and the order expressly carried forward the injunction granted in the *Bell case* against all persons former and present policyholders and other creditors, frrm proceeding against the defendants or against the "executive vice-president" except in that action and until the further order of the Court.

The executive vice-president gave the required bond, $30,-000.00, and entered upon his duties. Thereafter he as sole plaintiff brought his suit against the policyholders who had filed other suits and undertook to make all parties with any interest defendants, whereby he sought authority to transfer to some purchaser or re-insurer the live business of the company and to transfer therewith sufficient of the assets to constitute proper policy reserves and sell for a proper consideration the "going concern" value of the company, and for the purpose of such transfer of assets to free them from

the claims of creditors. But no definite opportunity and terms for such sale and transfer were alleged.

A defendant, Mattie Dunn Carroll, demurred to the complaint upon several grounds of which two were sustained by the presiding Judge and the others passed over. He held that Gary as executive vice-president had not sufficient interest in the controversy to maintain the action, which was the first ground of the demurrer; and he likewise upheld the third ground, to the effect that the complaint did not submit any definite plan for the sale or conversion of the live insurance business so that the complaint was demurrable for indefiniteness.

Appeal to this Court from the order just mentioned was perfected and arguments thereon were heard along with arguments upon this proceeding in the original jurisdiction, and that appeal is separately disposed of, decision filed herewith affirming in part the Circuit Court.

Since these arguments this Court has heard the appeal of *Rowley et al.,* also in the *Morris case,* and our judgment disposing of that appeal is likewise filed concurrently herewith. *Ex Parte Rowley,* 20 S. E. (2d), 383. In it the judgment of the Circuit Court is fully affirmed.

The complicated situation stated above is thus clarified by the disposition of the aforementioned appeals to this Court and the decision of the issue properly raised, as we have seen, in this proceeding in the original jurisdiction will so further clarify the situation that the *Morris case* may proceed in the Circuit Court without undue delay. In it the reports and recommendations of the Receiver, the "executive vice-president," may be considered and acted upon.

The issue is: Do the funds of the company necessary to constitute proper and legal reserves against the existing, current policies constitute a fund exclusively so applicable and which cannot be reached by other creditors of the company? In other words, is it a trust fund for that alone? The record discloses that the amount in the custodian's hands is

about sufficient for the stated purpose. For definitions of "reserves" see 37 C. J., 368 and 29 Am. Jur., 67.

Consideration alone of the applicable sections of the ■ Code of 1932, Sections 8030-8072, compels an affirmative answer; particularly Sections 8032, 8036 and 8041, which latter provides expressly that funds constituting the reserves upon certain policies "shall not be liable for nor used for the payment of the debts and obligations of the society other than the benefits  *  *  *." All persons doing business with the company were charged with knowledge of its nature under the law.

Furthermore the by-laws of the company provided similarly that the reserve fund was a trust fund to be held for the benefit of the policyholders for the payment solely of claims arising thereon; and by Section 8046 of the Code this by-law was a part of each policy, as were the others and the charter. And each policy contained the express provision that it was issued on the American Experience Table of Mortality, with interest at three and one-half per cent. per annum, so each policyholder had notice of the terms of his contract with the right to rely thereon and the corresponding duty to be bound by it. It is said in 29 Am. Jur., 107: "It is likewise true that special funds of mutual insurance companies must be applied to the purpose and for the benefit of the class of persons for which they were created, where contract rights exist as to them." See the same rule in 32 C. J., 1051, and cases cited in footnote. Persuasive also, at least, is the authority of *Wise v. Carolina Hail Insurance Co.,* 108 S. C., 504, 94 S. E., 535, recently cited with approval in petition of State, 182 S. C., 369, 189 S. E., 475.

It is, therefore, held that the policy reserves constitute a special fund applicable to that purpose only. The statutes (Code, Sections 8030-8072) and the policy contracts require it. In the absence of capital or other security requirements this is a valuable guaranty to policyholders and about all such provided by the Code with respect to this type of

organization, except the contemplated surveillance of the State Insurance Commissioner.

The statutes appear to constitute a "uniform law" adopted in a great many states at about the same time. Creations under them, Fraternal Benefits Associations, are not subject to the laws governing insurance companies except those that are made expressly so applicable. Code 1932, Section 8070. *Robertson v. Fraternal Union,* 85 S. C., 221, 67 S. E., 247; *Stewart v. W. O. W.,* 195 S. C., 365, 11 S. E. (2d), 449. Incidentally, they are tax-exempt under the terms of Section 8066 of the Code, 1932, which declares them to be "charitable and benevolent institutions." Section 8030 enjoins that they shall be conducted "solely for the mutual benefit of its members and their beneficiaries, and not for profit  *  *  *."

The question coming within the foregoing as stated, to wit, whether the former policyholders whose contracts have lapsed under the respective terms of them, for failure to pay premiums, have any rights in or against the reserve funds, is answered in the negative. These former policyholders, whether they ceased premium payments to the company or the "Executive Vice-President," have received the protection provided by their policies as long as they were kept "alive" by the payment of premiums and for such periods as the policies provided, respectively, for extended insurance and now have no claim against, or right to participate in any distribution of, the "reserves"; their former shares thereof, respectively, have been thereby consumed. 29 Am. Jur., 106, Insurance, Section 79. *Huber v. Martin,* 1906, 127 Wis., 412, 105 N. W., 1031, 3 L. R. A. (N. S.), 653, 115 Am. St. Rep., 1023, 7 Ann. Cas., 400.

It is thus seen that the funds in the hands of the custodian of the Court and which may hereafter come into his hands, after the payment of proper and approved expenses of administration, and so far as necessary to constitute the reserves against the live and current policies, as provided by

the statutes, the by-laws and the contracts, are exclusively applicable thereto and to the payment of proper claims under such "live" policies, and are not subject to the claims of other creditors.

No question properly arises on the record as to the rights and claims of the latter, the "other creditors," to and against other or separate funds, more such than necessary to constitute the reserves against the current policies, which additional funds may by any means come into the hands of the executive vice-president, and no such question is now adjudicated.

The position of some of the respondents that they who discontinued premium payments on their policies after appointment of the "Executive Vice-President" are entitled to share in the reserves has been carefully considered, but we are unable to distinguish between their condition and that of those who stopped premium payments before such appointment. Both have fared alike. And in the order of appointment Mr. Gary was expressly directed by the Court to continue the operation of the company to the extent of the receipt of premiums and of the payment of proper claims under policies in good standing, that is with premiums paid or the insurance extended under the contracts. All that has been said above with respect to the holders of lapsed policies is equally applicable to lapses occurring before the Court took hold of the funds and operations and afterward.

Likewise we have considered the challenge of some of the respondents of the conduct and fitness of the guardian *ad litem* of certain other of the respondents under disability, and we find no merit in the contentions.

These respondents have also undertaken to argue an issue concerning the validity of the appointment by the Circuit Court of Mr. Gary as Receiver, styled "Executive Vice-President" of the company. This is directly raised and determined in the appeal of Rowley and others, referred to above and simultaneously decided herewith, in which the

same parties are involved and the same counsel are engaged, and need not be dealt with here.

What has been said disposes of the necessary issues made by the pleadings and, for the reasons stated, we find the returns of the respondents insufficient and the petitioner therefore entitled, in his behalf and that of others similarly situated, to the relief sought, and the respondents and others in like circumstances are permanently enjoined, in accord with the terms of the temporary order, mentioned in the first paragraph above, from asserting claims against the funds now and hereafter in the hands of Frank B. Gary, Jr., as the officer of the Court, other than as is herein adjudged; and it is so ordered.

Petition granted.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and FISHBURNE, and CIRCUIT JUDGE WM. H. GRIMBALL, ACTING ASSOCIATE JUSTICE, concur.