# CHARLESTON.

McCarthy *et als.* v. Saunders *et al.*

Submitted March 4, 1919.    Decided March 11, 1919.

1. Quaere.

   Query: Is the written admission or accusation to a creditor by one partner after the dissolution of the partnership that another · partner before dissolution fraudulently withdrew his money from the firm assets and conveyed away his land to defraud firm creditors admissible as evidence against such partner in a suit by creditors of the firm against him to set aside his deed? (p. 615).

2. Fraudulent Conveyances—*Conveyance to Secure Barred Debt— Evidence.*

   Where a debtor in failing circumstances conveys his property to a near relative in consideration of old debts then barred by the statute of limitations, such fact constitutes a strong circumstance tending to show fraudulent intent against creditors whose debts were not so barred.    (p. 616).

3. Same—*Fraudulent Intent—Proof.*

   In a suit by a creditor to set aside as fraudulent a deed made by his debtor the circumstances attending the transaction are often not only sufficient to establish the fraudulent intent but the only available evidence, and it is not essential that the fraud be proved thereby beyond a reasonable doubt.    (p. 617).

4. Same—*Badges of Fraud—Failure to Call Witness.*

   In a suit by a creditor to set aside as fraudulent a deed made by his debtor, the failure of the debtor to call important witnesses to his transaction relating to such deed constitutes a badge of fraud.    (p. 617).

5. Same—*Badges of Fraud.*

   Circumstances indicating excessive effort to show appearances of fairness or regularity not observed in other transactions by a debtor are to be regarded as badges of fraud.    (p. 617).

6. Same—*Payment of Consideration—Affirmative Defense.*

   Where fraud on the part of a debtor in the conveyance of his property is established, the payment of a full, fair and adequate consideration for the property is an affirmative defense for the purchaser to be established by clear proof, and when payments are large, if unaccompanied by receipts, memoranda or other documentary evidence, the evidence must be clear, positive, be fully consistent with all the evidence offered by him and free from self-contradiction.    (p. 619).

Appeal from Circuit Court, Greenbrier County.

Bill by the Florence W. McCarthy Company and others against W. H. Saunders and others. Decree for defendants, and plaintiffs appeal.

*Reversed and remanded.*

*J. H. Crosier* and *S. N. Pace,* for appellants.
*S. M. Austin,* for appellees.

Miller, President:

Upon the bill of numerous creditors of W. H.' Saunders & Bro., the separate demurrers and answers of the defendants W. H. Saunders and T. B. Green, the depositions and proof taken and filed on their behalf, and the final decree below denying the relief prayed for, "two principal questions are presented. The first is whether as alleged the deed of April 4, 1917, from W. H. Saunders and wife to T. B. Green for a tract of twelve acres of land near Ronceverte, Greenbrier county, belonging to said Saunders, for the purported consideration of fifteen hundred dollars was fraudulent and made with intent to hinder, delay and defraud the creditors of said firm, a mercantile co-partnership then doing business in Ronceverte in said county. The second question is whether, if said deed was made with the fraudulent intent alleged, the grantee Green participated therein, had notice of the fraud or was an innocent purchaser for value and without notice and took good title to the land free from the claims and the demands of said creditors.

On the first question, of course if there was no fraud practiced on the part of the grantors, the grantee, if a purchaser in good faith and for a consideration deemed valuable in law, took good title to the land free from the claims of the plaintiffs. Was W. H. Saunders guilty of fraud? No evidence to establish fraud was taken by plaintiffs, and fraud is denied by him in his answer. No denial of his liability for plaintiffs' debt is interposed. To establish the fact of fraud plaintiffs rely solely upon the facts and circumstances disclosed by the pleadings and the evidence of the witnesses examined on behalf of the defendants, namely, T. B. Green, W. H. Saunders,

W. A. Bratton and P. H. McGrath. The record thus composed shows that the firm of W. H. Saunders & Brother consisted of W. H. Saunders and H. L. Saunders, the former about thirty-six, the latter about twenty-five years of age. The firm apparently began business in March or April, 1916, succeeding the firm of Dudding & Dudding. It does not appear what actual capital, if any, was invested by the members of the new firm, in the business, but it does appear from a statement by A. L. Saunders, who was constituted and remained the manager of the firm, made to Bradstreet's commercial agency on June 13, 1916, as a basis for credit, that the firm owed then all told for merchandise $100.00, and a mortgage on real estate $250.00, and had assets as follows: merchandise at cost, $600.00; notes receivable, $250.00; cash in bank, $400.00; other assets, $2625.00, which latter item apparently included fixtures, $125.00, and real estate, $2500.00, and altogether aggregating $3875.00. In another statement for credit made on behalf of the firm by A. L. Saunders to the Baltimore Bargain House, July 12, 1916, the assets were listed as follows: merchandise, $900.00; cash in bank, $630.00; real estate, $2500.00, subject to mortgage, $390.00. The liabilities given were, for merchandise, $200.00. Dudding & Dudding note due Nov. 24, 1916, $190.00. In another statement to the Baltimore Bargain House, made on behalf of the firm, purporting to be dated March 3, 1916, and signed by W. H. Saunders, the assets were stated as follows: Merchandise on hand, $600.00; notes and accounts, $500.00; cash on hand, $100.00; real estate $2500.00. No liabilities were listed. In this statement it is represented that the last inventory was made July 12, 1916, and that the statement was based on that inventory. So that it appears from this statement that the date at the heading thereof, March 27, 1916, must be an error, and that although Saunders in his pleadings and evidence professes ignorance of the actual condition of his firm from the beginning, nevertheless when on April 4, 1917, he made the deed to Green he had knowledge of the affairs of the firm as of July 12, 1916. Just what date the statement was made cannot be determined, but it must have been made after the inventory of July 12, 1916. These statements, though somewhat loosely made up, disclose the fact that the tract of land

referred to, consituted the principal asset made the basis of credit. And W. H. Saunders must have had sufficient knowledge of the condition of the business to know that a small concern like his could not have been making much money, and that outside of the land it had little basis for credit. And with firm debts thus accumulated, amounting in the aggregate to over $3000.00, he undertook, on April 4, 1917, to sell and dispose of the land to his brother-in-law Green for a cash consideration acknowledged in the deed, of $1500.00, or one thousand dollars less than the value placed upon it in the several statements for credit, and five hundred dollars less than he swears it was really worth of any man's money, for he says the property including buildings cost $2500.00.

Another piece of evidence made an exhibit with the bill is a letter from A. L. Saunders addressed to the Baltimore Bargain House, dated July 9, 1917, which volunteers the information in effect that his brother had drawn out of the bank all the money he had involved in the firm, and had deeded his land to his brother-in-law Green, and calling his attention to the previous statement made and signed by his brother in regard to the real estate. This letter is objected to as a self-serving declaration and as being incompetent evidence against W. H. Saunders. The facts charged therein are denied in the answer, and upon the introduction of the letter in evidence it was objected to. A. L. Saunders, though a party to this suit, made no appearance, and was not called as a witness. Whether admissions or accusations of this kind, made long after the dissolution of the firm, self-serving as they are, at least against the other defendants, are admissible, is doubtful; indeed we think the great weight of authority is against it. *Burdett* v. *Greer*, 63 W. Va. 515, 15 Ann. Cas. 935, and elaborate note at page 938. The case relied on by plaintiffs' counsel is *Dickinson's Executors* v. *Clarke*, 5 W. Va. 280. We have not thought it necessary to decide this question, for in our view of the record there is ample other evidence to establish fraud on the part of W. H. Saunders in the disposition of his land to Green. True, he says he did not know the financial condition of the firm, but he knew the small capital invested, he knew the firm had been in existence but a few

months, and he knew that the principal asset included in the statements as a basis for credit was this tract of land. Before undertaking to withdraw what land he had from the reach of the firm's creditors was it not his duty to know, if he did not know, the financial condition of his firm? It certainly was. He could not shut his eyes to the facts existing and escape the responsibility incurred to creditors. The proposition seems too plain for controversy. Moreover, his conveyance to Green at once precipitated actions by creditors, as was to be expected. And in a few days after his deed to Green he took the business in his own hands, put his brother out, and on April 21, 1917, procured the execution of a general assignment of the firm's assets to McGrath, trustee. There is no doubt in our minds that before making the deed to Green he had received information from some source of the impending collapse of the firm, for the firm had bought goods from many sources in the few months preceeding, and since the last statement sent out for credit. According to the inventory of July 12, 1916, the merchandise on hand was only $600.00, with notes and accounts amounting to $500.00, and cash $100.00. After the assignment the inventory showed in stock and fixtures over $3000.00, no cash, and liabilities to merchandise creditors of about the same amount. Saunders says he thought the assets would pay out, but what ground had he for his belief, considering the natural depreciation in the stock and the necessary expenses? The fact was that the assets realized gross only about $2000.00; the expenses were about $1000.00; preferred debts several hundred dollars, leaving for creditors a sum sufficient for a dividend of only fifteen to twenty percent. If as ignorant as he professes, Saunders could have had no such opinion based on facts on April 4, 1917, when he deeded his land to Green.

That W. H. Saunders so disposed of his land to hinder, delay and defraud his creditors, we have not the slightest doubt. He conveyed it for one thousand dollars less than he represented it to be worth, and though he acknowledged the receipt of fifteen hundred dollars in cash, the facts admitted are that $585.00 represented an old debt to Green, how old is not disclosed, but part of it was more than ten years old, another

part more than five, much of it of later origin, but none of it was represented by any evidence of indebtedness, note, book account, or otherwise, and neither his own nor the memory of any witness would serve to give any definiate date, though items ran as high as one and two hundred dollars. If these items had any real existence, and, as seems likely, were over five years old, they were barred by the statute of limitations. Debts so barred may constitute a sufficient moral consideration to support a deed, but when the debtor is insolvent the fact of the transfer of all his property in consideration of such debts constitutes a strong circumstance tending to show fraudulent intent against creditors whose debts were not barred. *Crawford* v. *Carper,* 4 W. Va. 56; *Bank* v. *Atkinson,* 32 W. Va. 203, 212; *Sturm* v. *Chalfant,* 38 W. Va. 248; *Knight* v. *Capito,* 23 W. Va. 639, 651.

Of the residue of the consideration, according to the evidence, $315.00 was paid to W. H. Saunders, not on the date or delivery of the deed but a few days afterwards, and the remaining sum, $600.00, was not paid to W. H. Saunders, but to his wife on April 5, 1917, but whether before or after the delivery of the deed, which according to the evidence of Saunders was about April 5, 1917, does not appear, for he says these sums were paid between the 4th and 10th of April. And we pause to inquire, if any such payments were made, what became of the money? The deed it is claimed was delivered about April 5th, the day after its date. No receipts for prior or subsequent payments were given. There is not a syllable of evidence to show what became of the money, whether deposited, spent, and by whom nowhere appears. It is not pretended that any of it was paid to firm creditors. We think the proof of fraud satisfies every requirement of the law. It comes out of the conduct and the mouths of the defendants themselves. While the burden is on the one charging fraud to prove it, it need not be made out by direct evidence. To impeach a conveyance the fraudulent action of the parties may be shown by the circumstances attending the transaction. And it is said in our books that circumstantial

evidence is not only sufficient but often the only evidence that can be adduced. *Richardson* v. *Ralphsnyder*, 40 W. Va. 15. The fraud need not be proved beyond a reasonable doubt. *Knight* v. *Nease*, 53 W. Va. 50.

Fraud on the part of the grantors being shown, the next question to be answered is, did the grantee Green participate in or have notice of the fraud, or was he a purchaser for a valuable consideration and without notice of the fraudulent intent? On this question we have the patent facts that the consideration named was little more than half the actual value as reported by Saunders; that Saunders made and had the deed prepared and recorded before delivery, and before payment of any of the purchase money; that no receipts were taken therefor other than the acknowledgment of the whole sum recited in the deed as cash; that more than one-third of this sum was old debts, and if ever owed, probably barred by the statute of limitations; that $315.00 thereof, professedly cash paid to W. H. Saunders, had a very dim existence, Green claimed he had it but could not say how long, where he got it, or how long he had been accumulating it; that the $600.00, the balance which it is claimed was paid Mrs. Saunders in the absence of W. H. Saunders from home, was borrowed from a Mrs. Baxter. Mrs. Baxter was not produced as a witness to this fact. Failure to call her as a witness constituted a badge of fraud. *Knight* v. *Capito, supra*. If borrowed from her, upon what terms of payment or on what security is not disclosed.

Another fact tending to show fraud on the part of both parties is that Saunders continued to occupy the property for six months or more after his deed to Green, although he gives it as his reason for selling so suddenly that he had secured a position which would take him away, and that he wanted to get to a place where he could educate his children. His remaining in possession of the property after his deed if unexplained would constitute a badge of fraud. He and Green do undertake to explain by swearing that it was agreed at the time that Saunders should remain in possession at the rate of $5.00 per month, and the only paper writing offered of any of their transactions besides the deed for the property, is

a receipt signed by Green, dated September 20, 1917, a few days before this suit was brought, for thirty dollars, covering the rent to September 1st, the full term of occupancy. The lack of documentary evidence of previous and more important transactions, and the production of written evidence of the alleged payment of rent, suggest, if they do not constitute, strong circumstances tending to show fraud. Circumstances indicating excessive effort to show appearance of fairness or regularity, which are not usually found in such transactions, are to be regarded as badges of fraud. *Hart* v. *Sandy,* 39 W. Va. 644.

Green, it appears, was a young man employed as railroad agent and telegraph operator at Marlinton for about nine years at the rate of from $70.00 to $103.00 per month. He had been married a couple of years, had one child, and had assisted in supporting his father and mother. In the meantime he claims to have purchased the interests of his brother and sister in his father's home farm of 44 acres in Greenbrier county for about $620.00, and claims to have loaned money to Saunders. But not a record book, not a note, not a receipt, nor memorandum of any kind is shown evidencing such transactions.

The rule of law in cases of this kind is that the payment of a full, fair and adequate consideration for the property is an affirmative defense on the part of the purchaser, to be established by clear proof, and when payments are large the testimony of the grantees, if unaccompanied by receipts, memoranda or other documentary evidence, must be clear, positive, be fully consistent with all the evidence offered by him and free from self-contradiction. *Colston* v. *Miller,* 55 W. Va. 490; *Bland* v. *Rigby,* 73 W. Va. 61, 65; *Milling Co.* v. *Read,* 76 W. Va. 557, syl. 9; *North Amer. Coal & Coke Co.* v. *O'Neal et al.,* 82 W. Va. 186, 95 S. E. 822. We do not think Green has made good his defense. Witnesses to some of his alleged transactions were not called. This was of itself a badge of fraud. *Knight* v. *Capito, supra.*

Our conclusion is to reverse the decree and remand the cause.

*Reversed and remanded.*