## 12309

### BEAUFORT VENEER & PACKAGE CO. *ET AL.* v. HIERS *ET AL.*

#### (140 S. E., 238)

1. Fraudulent Conveyances—Evidence Held Not to Entitle Creditors to Set Aside Deeds From Debtor to R. and From R. to Debtor's Wife (Civ. Code 1922, § 5218).—Where debtor, after commencement of action by creditor and after debtor had answered complaint, executed and delivered deed to R., and 9 days later R. executed and delivered deed to debtor's wife, conveying same tract of land, evidence *held* not to entitle creditors to set aside deeds on ground that they were made for fictitious consideration and for purpose of hindering, delaying, and defrauding creditors, under Civ. Code 1922, § 5218.

2. Fraudulent Conveyances—To Set Aside Deed Based on Valuable Consideration, Grantee's Participation in Fraudulent Purpose Must Appear (Civ. Code 1922, § 5218).—To set aside deed based on valuable consideration under Civ. Code 1922, § 5218, it must be shown, not only that grantor intended thereby to hinder, delay, or defraud creditors, but it must also appear that grantee participated in such fraudulent purpose.

Before JOHNSON, J., Colleton, August, 1926.   Affirmed.

Action by the Beaufort Veener & Package Company and others against J. J. Hiers and others.   From a decree dismissing plaintiffs' complaint, plaintiffs appeal.

The decree and exceptions are as follows:

### DECREE

"This was an action brought under the Statute of Elizabeth to set aside in favor of the plaintiff creditors of the defendant J. J. Hiers, a title deed of J. J. Heirs to M. I. Rizer, dated October 15, 1924, recorded in Book 55, at page 669, on October 15, 1924, R. M. C. office for Colleton County, and conveying 304 acres of land belonging to J. J. Hiers, and also a title deed of M. I. Rizer to Mobley M. Hiers, the wife of J. J. Hiers, dated October 24, 1924, recorded January 15, 1925, in Book 57, at page 59, in said office, conveying the same tract of land to the said Mobley

M. Hiers. In both of these conveyances it is stated that they were made subject to a lien of a certain mortgage executed by J. J. Hiers to the Farmers' & Merchants' Bank; the mortgage referred to being dated March 8, 1923, and recorded on March 9, 1923, in Book 44, at page 488, in said office, and covering the same tract of land, and being in the principal sum of $676.99. The consideration expressed in the first-mentioned deed of J. J. Hiers to M. I. Rizer was $2,200, and the consideration expressed in the deed from M. I. Rizer to Mobley M. Hiers was $2,400.

"Some time prior to the execution of the first-mentioned deed the Beaufort Veneer & Package Company had commenced an action on an unverified complaint in the Court of Common Pleas for Colleton County against E. P. Carter, J. J. Hiers, F. N. Jones et al., to recover a money judgment against them. The judgment roll in that case, introduced in evidence, does not disclose upon whom nor when the summons and complaint was served. An unverified answer, dated October 1, 1924, and containing a general denial, had been filed in that action by the named defendants, through their attorneys, Messrs. Howell and Fishburne.

"On October 15, 1924, the said deed from J. J. Hiers to M. I. Rizer was executed. Thereafter, on October 20, 1924, the plaintiff, through its attorney, Heber R. Padgett, served notice of a motion to strike out the said answer as sham, the motion to be heard on October 27, 1924. It was while this motion was pending that the second-mentioned deed from M. I. Rizer to Mobley M. Hiers was executed on October 24, 1924. I find from the testimony that neither the defendant M. M. Hiers nor M. I. Rizer had any actual knowledge of said pending motion at the time of the execution and delivery of the deed to Mobley M. Hiers from M. I. Rizer. Later, on October 30, 1924, the said answer was ordered stricken out as sham, and judgment was given in favor of the plaintiff in the sum of $929.35. Upon this

judgment execution was filed in the sheriff's office on December 15, 1924, upon which the sheriff returned a *nulla bona* on February 27, 1926. On this execution, however, the sheriff required appraisers to be appointed to set off a homestead for the defendant J. J. Hiers, but the homestead proceedings do not appear to have ever been consummated.

"At the hearing of the instant cause, it was established that J. J. Hiers owned 66 acres of land whereon he resided, in addition to the 304 acres of land conveyed by him to M. I. Rizer. It was also established that Mrs. Mobley M. Hiers owns 110 acres of land in her own right in addition to the said 304 acres purchased by her from M. I. Rizer. It does not appear from the record that any of these tracts are incumbered except the 304 acres referred to.

"Upon supplementary proceedings instituted by the plaintiff upon said judgment referred to, various witnesses were examined, including J. J. Hiers, Mobley M. Hiers, and M. I. Rizer. The present action was thereafter commenced, and the cause referred to the probate Judge, as *ex officio* master, to take the testimony.

"The defendant Farmers' & Merchants' Bank, in the present action answered and asked that the lien of its mortgage be protected. No attack was made upon that mortgage, and it was conceded by all counsel that its lien was a valid lien, and that the same should be protected by any judgment which might be rendered in this cause.

"The defendants J. J. Hiers, Mobley M. Hiers, and M. I. Rizer, by their answer, admitted the execution and delivery of the said deeds, but denied the other allegations of the complaint, which alleged, among other things, the lack of consideration and the purpose to hinder, delay, or defraud the creditors of J. J. Hiers.

"By consent of counsel, the plaintiff's attorney was allowed to introduce as a part of his testimony the testimony theretofore taken in the said supplementary proceedings. The

master certified to the Court that the testimony was taken before him and the cause was heard by me at chambers.

"In discussing fraudulent conveyances, the Court, in the case of *Lenhardt v. Ponder,* 64 S. C., 364; 42 S. E., 172, holds as follows:

" 'The rule is thus stated in *Magovern v. Richard,* 27 S. C., 286; 3 S. E., 340: "Was the mortgage void under the statute of frauds? To be void under said statute or at common law, it should be made to appear that it was either without consideration or that it was *mala fide,* one or both. In other words, for a paper of the kind to be invulnerable, it should be based upon a valuable consideration and be a *bona fide* transaction. * * * What is *mala fide?* It must be an intent not simply to assert one's own rights, but, in addition thereto, to defeat the rights of another, participated in, as we have said, by both parties to the instrument." The last-mentioned case [referring to the case of *Magovern v. Richard*] is cited with approval in the recent case of *McElwee v. Kennedy,* 56 S. C., 154; 34 S. E., 86, in which the Court also uses this language: "To annul for fraud a deed based upon a valuable consideration, it must not only be shown that the grantor intended thereby to hinder, delay, or defraud creitors, but it must also appear that the grantee participated in such fraudulent purpose. Even if we were to assume that there is evidence of *mala fides* in the grantor, yet, if the sole purpose of the grantee was to secure her claims, having no intent to hinder, delay, or defeat other creditors, her title cannot be affected by the *mala fides* of the grantor." '

"The Court, in the case of *Braffman v. Glover,* 35 S. C., 431; 14 S. E., 935, holds as follows:

" 'When a deed is made by a failing merchant to a kinsman within a few days after notification that creditors are about to sue, the grantee having been sent for at a distance of 30 miles, but his arrival not awaited, and the alleged con-

sideration being a prior advance by the grantee to grantor when she (the grantor) had purchased the land, and a verbal promise at that time to make such conveyance, if the grantor failed to make payment of balance due by her to her vendor (such balance not having yet matured), the Court will require the fullest, clearest, and most satisfactory evidence of good faith on the part of the parties, whenever the *bona fides* of the transaction is called in question.'

"Again, in the same case the Court holds as follows:

"'A deed made and received with the intent to defeat, delay, and hinder creditors of the grantor, is fraudulent and void as to creditors, even if based upon a valuable consideration.'

"In the case of *Jackson v. Lewis,* 34 S. C., 1; 12 S. E., 560, the Courts holds as follows:

"'A voluntary deed may be set aside at the instance of an existing creditor upon the ground of constructive or legal fraud, even where there is not the slightest taint of actual or moral fraud in the transaction, under the principle that the law requires that one must be just before he is generous. The law will not permit one who is indebted at the time to give his property away, provided such gift proves prejudicial to the interest of existing creditors. The motive which prompts the donor to make the gift is wholly immaterial. If the donor is indebted at the time, and the event proves that it is necessary to resort to the property attempted to be conveyed away by a voluntary deed for the purpose of paying such indebtedness, the voluntary conveyance will be set aside and the property subjected to the payment of such indebtedness, upon the ground that it would otherwise operate as a legal fraud upon the rights of creditors, even though it might be perfectly clear that the transaction was free from any trace of moral fraud.'

"To the same effect as the above cases are the following cases: *Richardson v. Rhodus,* 14 Rich., 95; *Hudnal v.*

*Wilder,* 4 McCord, 302; 17 Am. Dec., 744; *Blake v. Jones,* Bailey Eq., 142; 21 Am. Dec., 530; *Eigleberger v. Kiber,* 1 Hill Eq., 120; 26 Am. Dec., 192.

"The intention to defraud may be shown by surrounding circumstances, and from the acts of the parties, and need not be proven as an independent fact. *Greig v. Rice,* 66 S. C., 171; 44 S. E., 729; *McGee v. Wells,* 52 S. C., 472; 30 S. E., 602. See, also, *Miller v. Erwin,* 129 S. C., 415; 125 S. E., 36, and *McInnis v. McRae,* 134 S. C., 162; 132 S. E., 473. Opinion filed March 1, 1926.

"The defendant M. I. Rizer is not related by blood or marriage to either J. J. Hiers or his wife, Mobley M. Hiers, and, other than living in the same community and being on the usual friendly terms with the people of the community, there was no closer relationship between them.

"It would serve no useful purpose to discuss in detail the facts of the case. I will therefore simply announce the finding of the Court.

"I find as a matter of fact that the deed from J. J. Hiers to M. I. Rizer was not a voluntary conveyance, but was based upon a valuable consideration, to wit, the sum of $2,200, and that it was not made and received with any intent to defraud, delay, or hinder the creditors of J. J. Hiers. I further find, as a matter of fact, that the deed from M. I. Rizer to Mobley M. Hiers was not a voluntary conveyance, but was based upon a valuable consideration, to wit, the sum of $2,400, and that the said deed was not made and executed with the intent to defraud, delay, or hinder the creditors of the said J. J. Hiers. I do not think that the proof was sufficient to show even an intent on the part of J. J. Hiers to hinder, delay, or defraud his creditors in the execution of the deed, but certain it is that, even if there should have been an intent on the part of J. J. Hiers to hinder, delay, or defraud his creditors, the testimony failed to show that such an intent was participated in by the de-

fendant M. I. Rizer, who paid value for the property. I might state here that I find that the consideration paid for the said lands was reasonable and fair. Even if it could be said that such an intent was present with J. J. Hiers and with his wife, Mobley M. Hiers, and that Mrs. Mobley M. Hiers had notice of such an intent before taking the deed from M. I. Rizer, yet that would not be sufficient to set aside the deed from M. I. Rizer to Mrs. Mobley M. Hiers, for the reason that there was no such intent on the part of M. I. Rizer, and the deed to him must be protected. If the deed to him was good, and he had no such intent in making the conveyance to Mrs. Mobley M. Hiers, then his deed to her must be sustained, even although such an intent might be present with her, for the reason that, if the said M. I. Rizer was an innocent purchaser, for valuable consideration, without notice, then a title from that moment became sacred in him, and he could convey such a title to one who had notice, who would thereby be protected. *Southern Railway v. Carroll,* 86 S. C., 56; 67 S. E., 4.

"It is therefore ordered, adjudged, and decreed that the complaint be dismissed, and that the costs be paid by the plaintiff."

## EXCEPTIONS

"(1) The Court erred in deciding and holding the defendant M. I. Rizer to be an innocent purchaser for value without notice; the error being that the deed in question was executed after an action had been commenced against the defendant J. J. Hiers in the Common Pleas Court, which was sufficient to put any prudent person on guard.

"(2) The Court erred in deciding and holding that the deed from J. J. Hiers to M. I. Rizer was not made with intent to hinder, delay, and defraud; the error being that such deed was executed subsequent to the commencement of

an action in a Court of record, which was, under the circumstances, sufficient to show fraud.

"(3) That the Court erred in deciding and holding that a valuable consideration passed between the grantor and grantees to the deeds in question; the error being that proof of wrongdoing was strong and the circumstances surrounding the transactions were unusual, extraordinary, and clouded with suspicion, and was susceptible of no other inference than that of fraud, and that no consideration passed.

"(4) The Court erred in deciding and holding that there was not even an intent on the part of J. J. Hiers to defraud; the error being that the badges of fraud were so strong as to be susceptible of no other inference than that of fraud."

*Messrs. Heber R. Padgett and J. J. Padgett, Jr.,* for appellant, cite: *Sufficient notice to put grantee of deed on guard and cause him to make an investigation:* 111 S. C., 322. *"Badges of fraud":* 98 S. E., 800; 129 S. C., 270; 20 Cyc., 444–450; 20 S. E., 665; 101 S. C., 238.

*Messrs. Howell & Fishburne, and Padgett & Moorer,* for respondents.

November 8, 1927.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This is an action brought under the Statute of Elizabeth (Civ. Code 1922, § 5218), commenced April 15, 1926, in the Court of Common Pleas for Colleton County, by Beaufort Veneer & Package Company and all other creditors of J. J. Hiers, as plaintiff, against the defendants J. J. Hiers, Mobley M. Hiers, M. I. Rizer, and Farmers' & Merchants' Bank of Walterboro, S. C., for the purpose of setting aside a deed from J. J. Hiers to M. I. Rizer and from M. I. Rizer to Mobley M. Hiers, wife of J. J. Hiers, alleging that the deeds were made for a fictitious consideration and for the purpose of hindering, delaying, and defrauding the

plaintiff and all other creditors of J. J. Hiers, etc.  The defendants J. J. Hiers, M. I. Rizer, and Mobley M. Hiers, in their answers, denied these allegations.  The Farmers' & Merchants' Bank was made a party on account of holding a mortgage over the lands described in these deeds, the validity of which mortgage was conceded by all parties.

Prior to the commencement of this action, the Beaufort Veneer & Package Company commenced an action in the same Court against the Ashton Produce Exchange, of which J. J. Hiers was a member, and on whom service was obtained September 15, 1924, for the recovery of a money judgment. J. J. Hiers answered the complaint of this last-mentioned action by way of a general denial, and the cause was placed on the calendar for trial.  On October 30, 1924, pursuant to notice duly served, his Honor, Judge E. C. Dennis, passed an order striking out as sham the answer of the defendant J. J. Hiers, and further ordered that judgment be entered up against J. J. Hiers in the sum of $929.35.  Subsequently to the commencement of the last-mentioned action, and after J. J. Hiers had answered the complaint, he executed and delivered the deed above mentioned; that is ,the deed to M. I. Rizer, dated October 15, 1924, whereby he conveyed unto M. I. Rizer the lands described in the complaint of the action first above mentioned, consisting of 304 acres, in Colleton County.  Thereafter, on October 24, 1924, 9 days after the execution of the deed by J. J. Hiers to M. I. Rizer, M. I. Rizer executed and delivered a deed to Mobley M. Hiers, wife of J. J. Hiers, conveyed unto her the same tract of land.  Both deeds were executed after J. J. Hiers had answered the suit by Beaufort Veneer & Package Company for a money judgment, and the deed of M. I. Rizer to Mobley M. Hiers was executed after service of notice on J. J. Hiers to strike out his answer in the last-mentioned suit.  These facts are admitted.

By consent, the action to set aside the deeds was referred to the Judge of Probate for Colleton County to take the testimony and report the same to the Court. The matter was heard by his Honor, Judge J. Henry Johnson, on the testimony reported, who decided the issues adversely to the plaintiff, and ordered the complaint dismissed. From the decree of his Honor, Judge Johnson, the plaintiff has appealed to this Court, imputing to his Honor as set forth under the several exceptions. The decree and exceptions will be reported.

The appellant takes the position in the exceptions, which need not be considered separately, that the proof in the case entitles the plaintiff to the relief prayed for, and that his Honor, Judge Johnson, erred in not so holding and issuing a decree accordingly.

So much of the testimony pertinent to the questions raised by appellant's exception is, in substance, as follows:

J. J. Hiers testified that he conveyed unto his codefendant M. I. Rizer the land in question, receiving for the same the sum of $2,200 in cash, which amount he claimed to be the value of the land; that the money was paid to him by Mr. Rizer in actual cash at the time of the execution and delivery of the deed by him to Mr. Rizer; that he used the greater part of the money received for the land in the payment of long-standing obligations and the balance he used in the purchase of goods for his family; that in the payment of these outstanding obligations he used no checks, but paid the money. He further stated that later his wife, the defendant Mobley M. Hiers, got dissatisfied about the land being sold and got him to go with her to see Mr. Rizer for the purpose of trying to purchase the land from Mr. Rizer; that his wife succeeded in making a trade with Mr. Rizer and purchased the land from him for the sum of $2,-400, stating that Mr. Rizer would not convey the land to his

wife without a profit, and that Mr. Rizer charged the sum of $200 as a profit.

The defendant M. I. Rizer, in his testimony, stated that he purchased the land in question from J. J. Hiers, giving him the sum of $2,200 for the same, and stated that he regarded that amount as being the value of the land. Mr. Rizer further testified that he paid the said sum in cash to Mr. Hiers at the time of the execution and delivery of the deed; that he made no investigations regarding the property, for the reason that he had known the place for a long time. Mr. Rizer further testified that it was his custom to keep some money in hand; that the most of this money which he had in hand at this time was for the sale of cotton, and, while he had busines with banks from time to time, he also kept money on hand to operate his buiness. It further appears from the testimony that Mr. Rizer is a large farmer and makes a considerable amount of cotton on his farm. The subscribing witnesses substantiated Mr. Rizer and Mr. Hiers as to the actual money being paid over to Mr. Hiers by Mr. Rizer at the time of the execution and delivery of the deed.

The defendant Mobley M. Hiers, the wife of J. J. Hiers, testified that she was willing for her husband to sell this tract of land in order that he might raise money to pay off the obligations that he owed and to help get his business in better shape; that she renounced her dower on the deed which her husband executed to Mr. Rizer, but that later on she got to thinking over the matter and was sorry that the land had been disposed of, realizing that she and her husband might need this land for their children, and she decided to try to get the land back from Mr. Rizer. She stated that she owned a tract of land, and that she had been able to save a little from year to year from the operation of a farming business on the same; that she had sold chickens and hogs, and occasionally a cow and in this way she had been able to

save up a little money from year to year over a period of
something like 16 or 18 years; that Mr. Rizer, when ap-
proached on the subject, stated that he would sell the land
to her, provided she would give him a profit, and he de-
manded the sum of $200, making the amount which she
paid Mr. Rizer $2,400. She further stated that this amount
was paid to Mr. Rizer in cash. The subscribing witnesses
and Mr. Rizer and her husband substantiated Mrs. Hiers as
to her having paid the money to Mr. Rizer in cash when the
deed was executed and delivered to her by Mr. Rizer. Other
witnesses testified that the land was not worth over $2,200.
Further in the testimony of the defendant Mobley M. Hiers
she stated that she did not keep her money in banks because
of so many bank failures; that she preferred to take care of
the little money that she saved from time to time rather than
risk it in a bank. It was also brought out by other witnesses
that there had been a number of bank failures in that locality
during the last few years. The defendant J. J. Hiers also
stated in his testimony that he did not know where his wife
kept her money, except that he knew it was kept somewhere
on the premises, and Mrs. Hiers did not state where she kept
the money.

In the opinion of this Court, the proof in the case
1, 2   does not entitle the plaintiff to the relief prayed for.

Granting, as contended by the appellant, that there
were circumstances surrounding the transaction clouded
with suspicion, it does not follow that there was no other
inference than that of fraud. To set aside a deed under the
Statute of Elizabeth, the proof must be brought within the
well-recognized rule, which is clearly stated in the decree of
his Honor, Judge J. Henry Johnson.

In view of the clear statement of the law by his Honor,
Judge Johnson, governing the question at issue, it is unneces-
sary for a further discussion of the law by this Court.

For the reasons assigned in the decree of his Honor, Judge Johnson, it is the judgment of this Court that the judgment of the Circuit Court be and is hereby affirmed.

Mr. Chief Justice Watts and Messrs. Justices Blease and Stabler concur.

Mr. Justice Blease (concurring): When I read the strongly worded opinion of Mr. Justice Cothran, I was inclined to agree with him that this cause should be reversed. A further and more careful reading of the record, however, has forced me to the conclusion that the evidence adduced in the lower Court does not justify all the inferences drawn therefrom by Mr. Justice Cothran, and that the defendants Mrs. Hiers and Rizer do not deserve the severe castigation put upon them by the learned justice.

The law applicable to the case is well settled in my opinion, and is correctly stated by the Circuit Judge in his decree, as far as he went. I agree also with most of the legal propositions taken by Mr. Justice Cothran. I shall refer to one, however, later, taken by him, that I think he should have stated a little differently.

The issues in this case revolve mainly around the facts and their application to the law. Without going extendedly into the testimony introduced at the hearing, I shall make a few observations as to the main reasons advanced by Mr. Justice Cothran for his view that the deed attacked should be set aside. These I understand to be: (1) The gross inadequancy of the consideration of the deed from Hiers to Rizer; (2) the payment of the purchase money in cash; (3) the fact that Hiers had his brother, a lawyer in Hampton, to prepare the deed, and did not at the time and place execute it; (4) failure of Rizer to make examination of title and to take immediate possession of the premises; (5) failure of Hiers to produce as witnesses the persons to whom he claimed he paid the money received from Rizer; (6) the hasty conveyance of the land by Rizer to Mrs. Hiers, who could have purchased direct from her husband at a saving

of $200 in the purchase price; and (7) doubt that Mrs. Hiers could have had as much as $1,800 in cash, derived from the sale of her chickens, eggs, and hogs and the income from her own farm of 110 acres.

For brevity's sake, I refer hereafter to the points stated by number only.

(1) Hiers sold the land to Rizer for $2,200, around $7 per acre. Mr. Justice Cothran thinks that it is worth $7,500, or around $25 per acre. One witness, Mr. Mills, tetsified that the land was worth the amount fixed by Mr. Justice Cothran on June 3, 1926, the day he testified. This seems to be the only testimony that the value was so much. Messrs. Breland, Bennett, and Thomas, in their testimony, valued the place at the time of the sale from Hiers to Rizer at $2,000. Mr. Bennett stated that there was no demand for farming lands at that time. In addition to the testimony mentioned, this Court can well take judicial cognizance of the fact that for several years past farming lands in South Carolina, and especially those in Colleton and surrounding counties, have sold at very low prices, when sale could be made at all; this condition being due to the inability to grow cotton on account of the destructive boll weevil. Many former valuable farms in that section have been sold under mortgage, and quite a number for taxes. Certainly the proof of inadequate consideration was lacking.

(2) Rizer, Hiers, and two other witnesses swore that Rizer paid $1,500 of the purchase price in cash, deducting the amount of the mortgage debt he assumed. There was testimony that Rizer was a man of considerable wealth, and that he often had goodly sums of cash in his pockets. Numerous banks in that section of the State were then closed; many, still open, were notoriously known to be insolvent. These facts, with the added knowledge that some people just prefer cash to checks, seem sufficient to dispose of the fraud charge because of the cash payment. The writer, in his experience as a practicing attorney, has seen

many times more cash than $1,500 paid over in land trans-
actions, when there was absolutely no question as to the good
faith of the parties.

(3) It seems easy to figure out why Hiers went to his
lawyer brother in Hampton to prepare the deed, because he
probably could get the work done free.   Many people just
naturally hate to pay for drawing land papers.   Too, many
people do not want to sign deeds to their lands until they get
the money in hand, or see it in sight.   Then Mrs. Hiers had
to renounce her dower interest, and she was not in Hampton
when the deed was prepared.

(4) Of course, it would have been the act of a prudent
man for Rizer to have had an attorney examine his title.
Everyday experience causes us, though, to know that thou-
sands of tracts of land have been bought and sold in South
Carolina without purchasers making any examination of
title.   In this case, Rizer knew the land; he lived close to
it.   Almost every one in a farming community knows the
history of the land titles in the neighborhood, and generally
know all about the mortgages.

It is true Rizer did not take immediate possession on
October 15, 1924, the date of his deed, and he did not pro-
ceed to gather the crops, which may have been on the place,
as stated by Mr. Justice Cothran.   Technically, under the
law, as a grantee, he probably had the right to take posses-
sion and to take charge of the crops, unless possession and
the crops were reserved to the grantor.   We know, though,
that few deeds to farming lands made in the fall contain
reservations as to possession and crops.   Our people gener-
ally think growing crops do not pass by the deed, and few
grantees would attempt to exercise rights to the crops.   And
I fail to find in the evidence anything to show that at the
time of the execution of the deed there were any growing
crops on the land.

The legal proposition stated by Mr. Justice Cothran,
"that a change of possession does not accompany the execu-

tion and delivery of a deed, is a badge of fraud," is a correct statement of the law, in so far as it goes. The last two cases cited by him (*Nelson v. Good,* 20 S. C., 223, and *McGee v. Wells,* 52 S. C., 472; 30 S. E., 602), in which that principle is approved, stated further though that this badge of fraud is not an irrebuttable presumption of fraud.

(5) The record shows that most of the witnesses, even the defendants, were placed on the witness stand by the plaintiff. The plaintiff, it seems, was "digging" into the transactions. The attorney for the plaintiff talked to some of the witnesses before the reference, evidently inquiring into what they would testify. After the defendant Hiers had given, in his testimony, the names of the persons to whom he had paid the money, which had been paid to him by Rizer, several days intervened before the reference finally closed. The defendants seemed satisfied with the showing they had made. The plaintiff, if it thought Hiers had made false statements, could easily have summoned as witnesses the persons referred to by him, and had these persons examined as to the truth of his statements. Since there was no contradiction of Hiers' testimony, I do not see how this Court could, without any evidence whatever, presume that Hiers committed perjury.

(6) In a most interesting opinion of Mr. Justice Cothran in a case now before this Court, he called attention to "the recognized love of the Anglo-Saxon for his land." That love is as strong, may be stronger, in the women of the race than it is in the men. The depth of that love is not fully realized until the Anglo-Saxon sees his land passing from his possession into the possession of another. Try as hard as we can, we men, even if we happen to be judges, cannot comprehend and understand the minds and hearts of women. Solomon, who should have known much about thousand of them, admitted that he could not fathom them. I have heard that some women like to show their husbands that they can save the property when the head of the family has

lost it. And I have been told that a woman reserves the right to change her mind. It may be that a philosophy like that will explain why Mrs. Hiers would not purchase the land from her husband, and yet within 9 days bought it of Rizer at a profit to the latter of $200. I know of a case not long since where the husband, who was not insolvent, sold a large tract of land at what was considered an excellent price; within 5 days, at the instance of his wife, he repurchased just about half of the place for the amount for which he had sold the whole of it.

(7) If Mrs. Hiers was a thrifty woman, she probably could have saved up $1,800 in 16 years, as she testified, from the sources mentioned by her. Many farmers' wives are doing even better than that now, for our Winthrop demonstration agents have been showing them for some years how to make money, even when their husbands fail on the farm. The prices that lawyers and judges pay for eggs, butter, poultry, hams, etc., attest strongly the truth of Mrs. Hiers' testimony.

My view is further strengthened because of other things: The plaintiff did not show that Hiers was insolvent. While the Sheriff returned a *nulla bona* on the execution, and Hiers had claimed a homestead in his other real estate, the homestead proceedings were not concluded, and no inquiry seems to have been made as to the value of personal property Hiers owned.

There was not sufficient testimony that either Rizer or Mrs. Hiers knew of Hiers' insolvency, if he was insolvent; and no evidence showing that either of them had notice of plaintiff's suit against Hiers. Conceding that which is most probable, the knowledge of Mrs. Hiers of these two things, still we cannot presume, without some evidence pointing thereto, that Rizer had knowledge thereof.

In passing upon issues of fact in a case of this nature, and in deciding if the acts and conduct of the parties were fraudulent, we must judge the parties by their situation, experi-

ence, education, their manner of doing business, and the like. Perhaps judges, lawyers, bankers, or merchants would not have bought and sold land as these farmers bought and sold it. Some act of a lawyer or banker might be regarded as positive proof of fraud, while a similar act done by a farmer or mechanic might have no bearing whatever in establishing fraudulent conduct.

I feel sure that his Honor, Judge Johnson, resident Judge of the Circuit, who heard this case, knew personally most, if not all, of the witnesses; certainly, he knew their respective reputations for veracity. In fraud cases, the credibility of the witnesses is worth much in determining the value to be placed upon their testimony. When fraud is charged, the proof of the charge depends greatly upon the character of the person accused, as well as that of the witnesses who bring the accusation.

The burden rests upon the appellant to convince this Court that the Circuit Judge committed error; and I am not so convinced.

Mr. Justice Stabler concurs.

Mr. Justice Cothran (dissenting): I am firmly convinced that this case presents a deliberate and ingenious conspiracy, on the part of J. J. Hiers, his wife, Mobley H. Hires, and M. I. Rizer, aided and abetted by H. M. Thomas, to put the 304 acres of land which belonged to J. J. Hiers, in his wife's name, beyond the reach of his creditors, and, therefore, respectfully dissent from the conclusion to the contrary, announced in the opinion of Mr. Justice Carter.

The chronology of the case, with its swiftly succeeding events, is exceedingly significant:

On September 15, 1924, the plaintiff served upon the defendant J. J. Hiers summons and complaint against the Ashton Produce Exchange and the members composing that unincorporated body, including the defendant J. J. Hiers, for the amount of a bill of goods which it had shipped to the exchange, *order notify,* but which H. M. Thomas, the

secretary of that body and the cashier of the Ashton Bank, had procured to be delivered without production of the bill of lading, upon his guaranty, as cashier of the bank, that the bill would be paid, but which never was.

On October 1, 1924, the defendant by his attorneys filed an answer to the complaint, setting up a general denial.

On October 15, 1924, subsequently to the commencement of the action and after J. J. Hiers had filed his answer, J. J. Hiers executed and delivered to the defendant M. I. Rizer a deed, upon the stated consideration of $2,000, by which he conveyed to him the 304-acre tract described in the complaint, upon which the defendant Mobley H. Hiers renounced her dower. The deed recited the existence of a mortgage of $675 by J. J. Hiers to the defendant bank, which it is claimed was deducted from the purchase price, and which as a matter of course was assumed by Rizer.

On October 20, 1924, the plaintiff, by its attorneys, served upon the attorneys for J. J. Hiers, notice of a motion to be made before his Honor, Judge Dennis, at Walterboro, on October 27th, for an order striking out the answer of J. J. Hiers as sham.

On October 24th (three days before the motion was to be heard), M. I. Rizer executed and delivered to the defendant Mobley H. Hiers, wife of J. J. Hiers, a deed, upon the stated consideration of $2,400, by which he conveyed to her the 304-acre tract which had been conveyed on October 15th, by J. J. Hiers to M. I. Rizer.

On October 27th, the motion of the plaintiff to strike the answer of J. J. Hiers was heard by his Honor, Judge Dennis, who on October 30th passed an order striking the answer out as sham, and ordering judgment in favor of the plaintiff for $929.35.

The judgment was duly entered up, and execution issued thereon, which was returned by the Sheriff *nulla bona.* Thereafter, on April 15, 1926, the present action was instituted for the purpose of setting aside the deed from J. J.

Hiers to M. I. Rizer and the deed from M. I. Rizer to Mobley H. Hiers, as fraudulent and made to hinder, delay, and defraud the plaintiff and other creditors of J. J. Hiers.

The case was referred to the Probate Judge simply to take the testimony and report the same to the Court.

Upon the coming in of the report with the testimony, the case was heard by his Honor, Judge Johnson, at Chambers, at Allendale (I assume upon the day noticed therefor), July 29, 1926. On August 5, 1926, he filed a decree dismissing the complaint, from which the plaintiff has appealed.

In the opinion of Mr. Justice Carter, it is practically conceded "that there were circumstances surrounding the transaction clouded with suspicion." I entirely agree with this statement, and go farther than suspicion.

The defendant J. J. Hiers says that he was in debt and anxious to be relieved; that he owed his brother, who drew up the various papers, $900, Dr. Clarke, $300, and H. M. Thomas, $200; and that he proposed to sell the 304 acres in order to pay them off. At that time he owned only his home place of 66 acres, outside of the 304 acres; he was farming upon that tract, as well as upon the home place; he had a large family to support, a son at one college and another at another. It was in evidence that the land was worth $25 per acre. Is it not strange that he was willing to deprive himself of the means of a livelihood and his family's support, at a loss of $3,500, in order to pay some of his debts, without advertising to any one but Rizer that he wanted to sell?

The celerity of the trade between him and Rizer is significant. "Mr. Rizer, I want to sell my 304-acre tract. What do you ask for it? $2,200. I will give it"—is the substance of what occurred between them. I have never heard before of a land trade so quickly consummated. J. J. Hiers then, according to his statement, put out for Hampton to have the deed drawn; he was so anxious to dispose of a $7,500 plantation for $2,200. He had his brother, to whom

he claims to have owed $900, to prepare the deed.  There is no reason why he could not have executed the deed at that time in Hampton; it was not necessary that the grantee be present to witness the execution; yet he gathers up two witnesses, this same man Thomas, the secretary of the defunct exchange and the cashier of the bank, who had procured the delivery of the goods shipped "order notify" without the production of the bill of lading and who admits that he had sent out misleading statements as to the financial condition of the exchange, and one Breland, and induced them to leave their business and travel five miles to the home of Rizer for the needless purpose of having Rizer witness their attestations.  I cannot but believe that they were carried to Rizer's home to witness the sham proceeding of his paying over $1,500 in cash to J. J. Hiers.

It cannot be expected that these parties will tell all that they know about this deal, but circumstances inexplicable upon any other theory are loud in their tones.

Is it not remarkable that Rizer should have so quickly closed the trade without a moment's hesitation; without an inspection of the premises; without an examination of the title?  His deed is dated October 15th; he reconveyed on October 24th.  During that interval there is not the slightest evidence of his taking possession of, or exercising any act of ownership over, the property; he did not even inquire as to the payment of taxes which were then due and payable. It is to be presumed that at that date, October 15th, all of the crops upon the place had not been gathered.  His deed, if valid, entitled him to all of these remaining crops.  There is not the slightest evidence that he, during that intervening period, made any such claim, or that J. J. Hiers relaxed his efforts to gather the crops remaining.

That a change of possession does not accompany the execution and delivery of a deed is a badge of fraud is decided in *Hudnal v. Wilder,* 4 McCord, 294; 17 Am. Dec., 744. *McElwee v. Sutton,* 2 Bailey, 128.  *Madden v. Day,* 1

Bailey, 337. *Smith v. Henry,* 2 Bailey, 118. *Anderson v. Fuller,* McMul. Eq., 27; 36 Am. Dec., 290. *Cordery v. Zeaty,* 2 Bailey, 205. *Hipp v. Sawyer,* Rich. Eq. Cas., 410. *Maples v. Maples,* Rice Eq., 300. *Footman v. Pendergrass,* 3 Rich. Eq., 33. *Belk v. Massey,* 11 Rich., 614. *Kohn v. Meyer,* 19 S. C., 190. *Nelson v. Good,* 20 S. C., 223. *McGee v. Wells,* 52 S. C., 472; 30 S. E., 602.

Another remarkable circumstance is that, although Rizer had dealings with not less than three banks, in which he had considerable deposits, the purchase price was paid in cash and not by check; and that he with money in bank should assume the payment of the bank's mortgage, which he had not paid on October 24th.

And then consider the conduct of the defendant J. J. Hiers: He testifies that he sold the land to pay his debts; that he received about $1,525 in cash, and on that day or the next paid his brother $900 upon a note or duebill held by him, paid Dr. Clarke $300 for medical services and borrowed money, and paid Thomas $200 upon a duebill. All of these payments he claims to have made in cash. He was not able to produce a scrap of paper evidencing the existence of these debts which he admits were in writing; he does not even say that he took up such evidences. His brother, who had loaned him the $900, and who prepared all the papers of these devious transactions, was not produced as a witness; the man who knew more about them than any one else, and who could, if such had been the fact, have corroborated the statement of J. J. Hiers as to the loan and payment. Neither was Dr. Clarke, who he claims was his debtor to the extent of $100 medical bill and $200 borrowed money, called to corroborate his statement. Only the man Thomas was called, whose testimony, in view of his intimate connection with the whole nefarious transaction, has not impressed me as being worthy of credence.

The testimony of Mrs. Hiers strikes me as most remarkable, and is totally insufficient to satisfactorily explain the

damning circumstances which "surround the transaction with suspicion." She testifies that J. J. Hiers had talked about selling the place for several months, and that she had expressed her willingness to sign her dower, and yet, within 9 days after the deed to Rizer was executed, she became dissatisfied with the sale and wanted to buy it back, for the reason, which existed all along, that she had six boys who should be provided for as farmers. It is passing strange that, if she was actuated by this motive after the sale, she, with $1,800 in cash on hand, had no such thought before the sale; and that she did not propose to do what she afterwards did, at a cost of $200 profit to Rizer. The truth of the matter is that a direct conveyance by J. J. Hiers to his wife would not have looked well, and the circuitous and devious plan of passing the title through Rizer was adopted. Her explanation of having more than $1,800 on hand in cash, derived from the sale of chickens, eggs, and hogs, and the income from the 110-acre farm, strains my credulity to the breaking point.

The attitude of J. J. Hiers to the debt for which he was being sued, supplies a reasonable explanation of his efforts to avoid payment of it. Evidently it was a debt contracted by the exchange, for which J. J. Hiers had received no benefit. He did not consider that he was justly obligated for it, and under such circumstances the effort was human, if not moral, to avoid it, if he could. It appears that, outside of the debts to his brother, to Dr. Clarke, to Thomas, and to the bank, he owed comparatively little. Not one of these creditors appears to have been pressing him; all of their alleged demands had been running for a long while; the only creditor who was pressing was the plaintiff, and it was the only one for which, in his anxiety to sell his property to pay his debts, no provision was made.

The result of the transactions is that J. J. Hiers has divested himself of everything except his home, protected by

the Homestead Law (Civ. Code, 1922, § 5490 et seq.), and the 304-acre tract is in his wife's name.

Under the evidence I do not see how it is possible to conclude that the conveyance to Rizer was a *bona fide* sale, or that both conveyances were not parts of a scheme to evade the payment of honest debts, of which all parties concerned were participants.

I regard this transaction as having the same effect as if J. J. Hiers had conveyed the property directly to his wife, and that it comes within the doctrine declared in *Farmers' Bank v. Bradham,* 129 S. C., 270; 123 S. E., 835, the syllabus of which is:

"A deed from judgment debtor to his wife made to prevent a creditor bank from collecting its expected deficiency judgment will be set aside in a proceeding by bank after it had secured such a judgment and a return of *nulla bona* had been made."

The intention to defraud may be shown by surrounding circumstances and from the acts of the parties, and need not be proven as an independent act. *Greig v. Rice,* 66 S. C., 171; 44 S. E., 729. *McGee v. Wells,* 52 S. C., 472; 30 S. E., 602.

In *Hart v. Sandy,* 39 W. Va., 644; 20 S. E., 665, it was held:

"Wherever there appears to be connected with the transaction circumstances indicating excessive effort to give it the appearance of fairness or regularity, which are not usual attendants of such business, the Courts will regard such circumstances as badges of fraud."

"If a transfer is made by a debtor in anticipation of a suit against him, or after a suit has been begun and while it is pending against him, this is a badge of fraud." 20 Cyc., 144, citing *Smith v. Henry,* 2 Bailey, 118. *Hipp v. Sawyer,* Rich. Eq. Cas., 410. *Watson v. Kennedy,* 3 Strob. Eq., 1. *Pettus v. Smith,* 4 Rich. Eq., 197.

"In a case of this kind the burden is undoubtedly upon the defendant to explain away and rebut the badge of fraud the testimony shows, and this can be done only by the most positive and clear testimony." From the decree of his Honor, Judge Johnson, affirmed by this Court in *Miller v. Erwin,* 129 S. C., 415; 125 S. E., 36.

In *McCarthy Co. v. Saunders,* 83 W. Va., 612; 98 S. E., 800, it was held:

"In a suit by a creditor to set aside as fraudulent a deed made by his debtor, the failure of the debtor to call important witnesses to his transaction relating to such deed, constitutes a badge of fraud."

The cases like *Lenhardt v. Ponder,* 64 S. C., 354; 42 S. E., 169. *Magovern v. Railroads,* 27 S. C., 386; 3 S. E., 340. *McElwee v. Kennedy,* 56 S. C., 154; 34 S. E., 86, and others of like character, are not in point. They all are cases of an honest purpose of a creditor to secure the payment of a debt due to him by an insolvent debtor.

The testimony in this case does not show a purpose on Mrs. Hiers' part to secure a debt; her husband owed her nothing; it shows a combined purpose on the part of all concerned, when the trail of the plaintiff after J. J. Hiers was getting hot, to aid his escape into the underbrush.

I think, therefore, that the decree of the Circuit Court should be reversed.